******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* ROBERTO ACOSTA
## (SC 19645)

Rogers, C. J., and Palmer, Eveleigh, McDonald,
Espinosa and Robinson, Js.

*Syllabus*

The defendant, who was convicted of the crimes of sexual assault in the
first degree and risk of injury to a child in connection with an incident
in 2009 involving A, his twelve year old niece, appealed to the Appellate
Court, claiming that the trial court had abused its discretion in admitting
evidence of uncharged sexual misconduct, pursuant to *State* v. *DeJesus*
(288 Conn. 418), that occurred in 1997 because that incident was too
remote in time and was insufficiently similar to the charged conduct.
The defendant came to visit A at her family home. The defendant asked
A where her parents were, and she responded that they would not be
home for several hours. After the defendant complimented A and
touched her inappropriately, he sexually assaulted her. The state sought
to offer evidence at the defendant's trial of, inter alia, the defendant's
prior sexual misconduct involving other female family members, who
were between nine and ten years old, for incidents that occurred in
1997 and 2006. With respect to the 1997 incident, the state proffered
evidence, over defense counsel's objection, that when the defendant's
nine year old niece, J, was visiting her grandmother's home, the defen-
dant blindfolded J and placed her hand on his penis, after which J stated
that she was going to tell her parents and ran away. The trial court
concluded that the proffered evidence was relevant and that its probative
value outweighed the prejudicial effect from its admission. The Appellate
Court affirmed the judgment of conviction, and the defendant, on the
granting of certification, appealed to this court. *Held* that the Appellate
Court correctly concluded that the trial court had not abused its discre-
tion in admitting the 1997 uncharged sexual misconduct evidence
because that evidence satisfied the requirements of *DeJesus*, as the 1997
incident was not too remote in time and was sufficiently similar to the
charged conduct: the 1997 uncharged misconduct was part of a sequence
including the 2006 uncharged misconduct and the 2009 charged conduct,
and was not an isolated incident, separated from the charged conduct
by an unbroken gap of twelve years; moreover, the defendant's conduct
with respect to A and J was sufficiently similar as the defendant placed
each victim's hand on his penis, and, although the defendant's miscon-
duct toward A escalated to vaginal penetration whereas his conduct
toward J culminated in inappropriate contact, the jury reasonably could
have inferred that the defendant stopped his actions toward J because
she rebuffed him and threatened to report him, and A and J were
sufficiently similar victims as both were prepubescent females and
nieces of the defendant, and these familial relationships offered the
defendant access to the victims and the opportunity for his actions;
furthermore, the public policy underpinnings of *DeJesus*, which justify
the admission of this type of evidence because of the unusually aberrant
and compulsive nature of the crime of child molestation, were relevant
because, with respect to both the 1997 misconduct and the charged
conduct, the victims were alone in private places, allowing the defendant
to act surreptitiously, in the absence of any neutral witnesses.

Argued January 23—officially released August 1, 2017

*Procedural History*

Substitute information charging the defendant with
the crime of sexual assault in the first degree and with
two counts of the crime of risk of injury to a child,
brought to the Superior Court in the judicial district of
Danbury and tried to the jury before *Pavia, J.*; verdict
and judgment of guilty, from which the defendant
appealed to the Appellate Court, *Lavine, Alvord* and

*Sullivan*, *Js.*, which affirmed the trial court's judgment, and the defendant, on the granting of certification, appealed to this court. *Affirmed*.

*Daniel J. Foster*, assigned counsel, for the appellant (defendant).

*James Ralls*, assistant state's attorney, with whom, on the brief, were *Stephen J. Sedensky III*, state's attorney, *Deborah P. Mabbett*, senior assistant state's attorney, and *Brett R. Aiello*, former special deputy assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The primary question presented in this appeal is whether evidence of uncharged sexual misconduct that occurred twelve years before a charged offense is too remote to be admissible pursuant to the factors set forth in *State* v. *DeJesus*, 288 Conn. 418, 476, 953 A.2d 45 (2008). The defendant, Roberto Acosta, appeals[1] from the judgment of the Appellate Court affirming his judgment of conviction, following a jury trial, of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1) and (2). *State* v. *Acosta*, 162 Conn. App. 774, 775, 129 A.3d 808 (2016). The defendant, relying on *DeJesus*, argues that evidence of twelve year old uncharged sexual misconduct is too remote and insufficiently similar to the charged offenses, that the trial court therefore abused its discretion in admitting it, and that the Appellate Court improperly concluded otherwise.[2] The state counters that the uncharged conduct is not too remote under *DeJesus*, particularly in light of the similarities between the conduct and the victims. We agree with the state that the trial court acted within its discretion in admitting the evidence and affirm the judgment of the Appellate Court.[3]

The Appellate Court set forth the following facts and procedural history. "One afternoon in the spring of 2009, A,[4] who was twelve years old and in sixth grade, had returned from school and was watching television at her home in Danbury. She lived with her parents and older brother, but she was alone at the time. Her parents were at work and were not expected until 6 or 7 p.m.

"When A's dog started barking, she looked outside and saw her uncle, the defendant, approaching the front door. He had not previously visited their home, and he did not live in the area. She opened the door and greeted him with a hug and a kiss because 'he was family.' After chatting for a bit, A took the defendant for a tour of the house. He asked where her parents were, and she told him that they would not be home until 6 p.m. The tour concluded in her bedroom, where she proceeded to show the defendant her snow globe collection. They continued to talk about the family, generally 'catching up,' when he told her that she looked beautiful. He then sat down on her bed and told her to do the same. The defendant began to rub her leg, shoulder and arms, again repeating that she looked beautiful.

"A was beginning to feel uncomfortable with the situation on her bed when the defendant instructed her to remove her shirt. She complied, and he unhooked her bra and started rubbing her breasts. At that point, he took her hand and placed it on his genital area on the outside of his pants. He told her to get undressed while he removed his own clothing. A 'just followed what he

said' because she did not know if he would hurt her. The defendant spread her legs and engaged in penile-vaginal intercourse with her. Approximately fifteen minutes later, after again asking what time her parents would be home, the defendant got dressed, told her 'to tell [her] parents that he said "hi,"' and then left the house. A was 'confused' and 'embarrass[ed],' and decided that she would not tell anyone about what had happened between her and the defendant.

"In January, 2012, while A was on a trip to New York City with two of her close friends, the girls decided to play a game of 'confessions.' A knew she could trust her girlfriends and told them that her uncle, the defendant, had sexually assaulted her. They all were upset, and A made her friends promise not to disclose the incident to anyone. Approximately one week later, however, one of the girls reported the incident to her guidance counselor at school, and A was asked to speak with her guidance counselor and a social worker. After she confirmed that she had been sexually assaulted by the defendant, an investigation commenced, and the defendant was arrested and charged with the three crimes [of] which he was convicted." (Footnote added.) Id., 775–76.

"Prior to trial, the state filed a notice of its intent to offer evidence of the defendant's prior misconduct involving three additional female family members. The alleged incidents took place in 1990, 1997, and 2006, when the prepubescent girl family members were between nine and ten years of age. On the first day of trial, outside the presence of the jury, the parties discussed the state's request. Defense counsel voiced his opposition to the proffered testimony with respect to the 1990 and the 1997 incidents. Id., 777. The defendant "did not object to the state's proffer of evidence with respect to the 2006 incident."[5] Id., 777 n.2.

"With respect to the 1990 incident, the state indicated that the young girl at issue was the defendant's niece and that the defendant began having sexual conversations with her when she was nine or ten years old. Those inappropriate sexual conversations continued for a few years. Defense counsel argued that the conduct was too remote in time and that there had been no sexual contact, as had been alleged in the other incidents. The court, after stating the legal standard for the admission of prior uncharged sexual misconduct set forth in *State* v. *DeJesus*, [supra, 288 Conn. 476], ruled that 'the time frame is too remote' and 'the conduct itself is not sufficiently similar' to the charged conduct in the present case. For that reason, the court concluded: '[T]he court feels that it has not met the relevancy standard. And, in turn, that to admit it would simply be too prejudicial . . . .'

"With respect to the 1997 incident, the proffered evidence was that the defendant grabbed the hand of J,

his nine year old niece, and placed it on his genital area. Defense counsel argued: '1997 is distant, so we do object, although you have an allegation of actual contact. And I will admit that's . . . as far as I'm concerned, a much closer call. I'm not going to concede that it should come in because I think on top of the other one, it is prejudicial.' The court ruled that the proffered evidence was relevant and that its probative value outweighed the prejudicial effect from its admission.

"At trial . . . J was called as a state's witness to testify about the defendant's prior misconduct in 1997. J testified that her uncle, the defendant, sexually molested her when she was nine years old. She testified that she and her two brothers were at her grandmother's house, where they often visited and where the defendant would pay them to do chores. The defendant sent the brothers away 'to do something,' and J remained in the kitchen alone with the defendant. After her brothers left, the defendant placed a long white tube sock around her eyes and then grabbed her hand and placed it on his genital area. Once J realized what it was, she yanked her hand back and pulled the sock from her eyes. She told the defendant that she was going to tell her parents what had happened, and she ran from the kitchen." (Footnote omitted.) Id., 777–79.

"[T]he jury returned a verdict of guilty on all three counts of the substitute long form information. The court accepted the verdict and rendered judgment accordingly. The defendant was sentenced to thirty years incarceration, execution suspended after seventeen years, followed by twenty-five years of probation with various conditions." Id., 777. This certified appeal followed.

"It is well established that we review the trial court's decision to admit evidence . . . for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Smith*, 313 Conn. 325, 336, 96 A.3d 1238 (2014). Generally, "[e]vidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person . . . ." Conn. Code Evid. § 4-5 (a). Exceptions exist, however, and "[e]vidence of other sexual misconduct is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct" if certain conditions are satisfied. Conn. Code Evid. § 4-5 (b).

Strong public policy concerns justify this exception for prior sexual misconduct. See *State* v. *DeJesus*, supra, 288 Conn. 468 (recognizing that "strong public policy reasons continue to exist to admit evidence of uncharged misconduct more liberally in sexual assault cases than in other criminal cases"). First, "in sex crime cases generally, and in child molestation cases in particular, the offense often is committed surreptitiously, in

the absence of any neutral witnesses. Consequently, courts allow prosecutorial authorities greater latitude in using prior misconduct evidence to bolster the credibility of the complaining witness and to aid in the obvious difficulty of proof." (Internal quotation marks omitted.) Id., 468–69. "Second, because of the unusually aberrant and pathological nature of the crime of child molestation, prior acts of similar misconduct, as opposed to other types of misconduct, are deemed to be highly probative because they tend to establish a necessary motive or explanation for an otherwise inexplicably horrible crime . . . and assist the jury in assessing the probability that a defendant has been falsely accused of such shocking behavior." (Citations omitted; internal quotation marks omitted.) Id., 469–70. Relatedly, "when human conduct involves sexual misconduct, people tend to act in generally consistent patterns of behavior, and . . . it is unlikely (although, of course, not impossible) that the same person will be falsely accused by a number of different victims." (Internal quotation marks omitted.) Id., 470.

Accordingly, this court has long held that "[e]vidence of prior sex offenses committed with persons other than the prosecuting witness is admissible to show a common design or plan where the prior offenses (1) are not too remote in time; (2) are similar to the offense charged; and (3) are committed upon persons similar to the prosecuting witness."[6] *State* v. *Esposito*, 192 Conn. 166, 169–70, 471 A.2d 949 (1984). In *State* v. *Romero*, 269 Conn. 481, 498, 849 A.2d 760 (2004), this court restated these factors in the context of "prior sexual misconduct" evidence, noting that "such evidence is admissible when the prior misconduct is: (1) not too remote in time; (2) similar to the charged offense; and (3) committed upon a person similar to the victim in the charged misconduct." This court further observed that "the probative value of . . . [prior sexual misconduct] evidence must outweigh [its] prejudicial effect . . . ." (Internal quotation marks omitted.) Id., 497.

Drawing on the aforementioned public policy justifications, this court in *DeJesus* reaffirmed that "evidence of uncharged sexual misconduct properly may be admitted in sex crime cases to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive criminal sexual behavior if: (1) the trial court finds that such evidence is relevant to the charged crime in that it is not too remote in time, is similar to the offense charged and is committed upon persons similar to the prosecuting witness;[7] and (2) the trial court concludes that the probative value of such evidence outweighs its prejudicial effect." (Footnote added.) *State* v. *DeJesus*, supra, 288 Conn. 476. Ascertaining the relevancy of uncharged sexual misconduct evidence is a fact intensive inquiry, because the trial court must consider all three of the *DeJesus* relevancy

factors together. See, e.g., *State* v. *Jacobson*, 283 Conn. 618, 632–35, 930 A.2d 628 (2007) (weighing remoteness of six to ten year interval between charged and uncharged misconduct, in relation to depth of similarities between respective victims and conduct in incidents in question). In the present case, the trial court was within its discretion to admit the 1997 evidence of uncharged sexual misconduct because the remoteness of the evidence is tempered by the similar conduct and victims in the two incidents.

Because we have repeatedly emphasized the connectedness of the three *DeJesus* relevancy factors, we decline to adopt a bright line rule for remoteness, or a rule that establishes a presumption that after ten years the uncharged conduct is too remote. In fact, in the present case, the uncharged sexual misconduct is not too remote in and of itself. In our cases predating *DeJesus*,[8] we recognized that although "increased remoteness in time does reduce the probative value of prior misconduct evidence"; *State* v. *Romero*, supra, 269 Conn. 499–500; it alone is not "determinative." *State* v. *Jacobson*, supra, 283 Conn. 633. Furthermore, "[e]ven a relatively long hiatus between the charged and uncharged misconduct . . . is not, by itself, determinative of the admissibility of common plan or scheme evidence . . . especially when there are distinct parallels between the prior misconduct and the charged misconduct." (Citation omitted.) Id. Consequently, this court has upheld the admission of relatively remote uncharged sexual misconduct evidence if the other relevant similarities warranted it. For example, this court concluded that the trial court did not abuse its discretion in admitting evidence of uncharged sexual misconduct in both *State* v. *Romero*, supra, 499–500, and *State* v. *Jacobson*, supra, 632–633, 640, in which the evidence of such conduct occurred nine years and six to ten years, respectively, before the charged misconduct.

In the present case, twelve years elapsed between the uncharged and charged conduct. *State* v. *Acosta*, supra, 162 Conn. App. 783. We recognize that twelve years is "not an insignificant period of time . . . ." *State* v. *Jacobson*, supra, 283 Conn. 632; see id. (describing six to ten year interval as not "insignificant"). Nevertheless, because we do not review the individual prongs of the *DeJesus* relevancy test in isolation, we may observe that the 1997 uncharged sexual misconduct is not a lone incident. Indeed, as we have already explained in this opinion, the trial court admitted evidence of uncharged sexual misconduct from 2006, to which the defendant did not object. *State* v. *Acosta*, supra, 162 Conn. App. 777 n.2. The 2006 evidence diminishes the remoteness concerns of the 1997 uncharged sexual misconduct by bridging the gap between the 1997 incident and the charged misconduct. Rather than an isolated incident, separated from the charged offense by an unbroken gap of twelve years, the 1997 uncharged

misconduct is part of a sequence including both the 2006 uncharged misconduct and the 2009 charged offense. Within that sequence, the longest gap was nine years between the 1997 and 2006 incidents. Our treatment of the 1997 incident as part of a series, rather than an isolated event, is particularly appropriate in light of our repeated recognition that one of the hallmarks of sexual misconduct is that it evinces itself in "generally consistent patterns of behavior . . . ." (Internal quotation marks omitted.) *State* v. *DeJesus*, supra, 288 Conn. 470.

The similarity of the conduct involved in the charged and uncharged incidents also supports the trial court's conclusion that the uncharged misconduct evidence was relevant under *DeJesus*. "It is well established that the victim and the conduct at issue need only be similar—not identical—to sustain the admission of uncharged misconduct evidence." *State* v. *George A.*, 308 Conn. 274, 298 n.24, 63 A.3d 918 (2013). Additionally, differences in the severity of misconduct may "not illustrate a behavioral distinction of any significance" when a victim rebuffs or reports the misconduct. (Internal quotation marks omitted.) *State* v. *McKenzie-Adams*, 281 Conn. 486, 531, 915 A.2d 822, cert. denied, 552 U.S. 888, 128 S. Ct. 248, 169 L. Ed. 2d 148 (2007).

For example, in *State* v. *McKenzie-Adams*, supra, 281 Conn. 489–90, the defendant, a high school teacher, had been convicted of thirteen counts of sexual assault in the second degree against two of his students. The defendant had penile-vaginal intercourse with one of the students on several occasions, and had engaged in oral sex with the other student and had digitally penetrated her vagina. Id., 491–96. This court concluded that the trial court did not abuse its discretion in admitting uncharged sexual misconduct evidence from a third student, even though the defendant's conduct toward her culminated in inappropriate comments and touching, because "the jury reasonably could have inferred from [the third student's] testimony that [the defendant's] misconduct ceased only after she rebuffed his sexual advances and reported his behavior to her mother and brother." Id., 531, 532.

In the present case, the charged and uncharged misconduct are sufficiently similar. In the initial stages of both incidents, the defendant placed the victim's hand on his penis. *State* v. *Acosta*, supra, 162 Conn. App. 776, 779. The defendant argues that the initial stages of the respective assaults are different, because the charged misconduct against A began with compliments and touching, whereas the uncharged misconduct against J began by tricking the victim into touching his penis. This argument is unconvincing, however, because the charged and uncharged misconduct need only be similar; *State* v. *George A.*, supra, 308 Conn. 298 n.24; and it is enough that the defendant placed both victims' hands on his penis. Furthermore, although the defen-

dant's misconduct toward A escalated to vaginal penetration, and his misconduct toward J culminated in inappropriate contact; *State* v. *Acosta*, supra, 776, 779; the distinction is unpersuasive. Indeed, because J rebuffed the defendant and threatened to report his actions; id., 779; the jury reasonably could have inferred that he stopped only because she rebuffed his sexual advances.[9] See *State* v. *McKenzie-Adams*, supra, 281 Conn. 531. Therefore, the similar conduct in the charged and uncharged incidents supports the relevancy of the uncharged misconduct evidence.

The victims were sufficiently similar to render the 1997 misconduct relevant under *DeJesus*. As with conduct, "the victim[s] . . . at issue need only be similar—not identical—to sustain the admission of uncharged misconduct evidence." *State* v. *George A.*, supra, 308 Conn. 298 n.24. Age and familial status may suggest victim similarities. See *State* v. *DeJesus*, supra, 288 Conn. 475 (taking into account that "[t]he women were similar in age," when weighing similarity of victims); *State* v. *Kulmac*, 230 Conn. 43, 63, 644 A.2d 887 (1994) (observing that in context of victim similarity, familial type relationship between defendant and victim's family gave him access to victim). In the present case, both victims were prepubescent at the time of the misconduct. *State* v. *Acosta*, supra, 162 Conn. App. 783. Furthermore, both were nieces of the defendant. Id. The familial relationships offered the defendant access to the victims and the opportunity for his actions. With regard to the charged misconduct, A let the defendant into her house even though he had never been to visit, because "he was family." (Internal quotation marks omitted.) Id., 775. In the 1997 incident, the defendant had access to J because they were both in the home of another family member. Id., 779.

Finally, we observe that the public policy underpinnings of *DeJesus* are particularly relevant here. The defendant's misconduct occurred when the victims of the 1997 misconduct and the charged misconduct were alone in private places. See *State* v. *Acosta*, supra, 162 Conn. App. 775, 779 (describing respective victims as being alone in private homes with defendant at time of misconduct). He was able to act, therefore, "surreptitiously, in the absence of any neutral witnesses." (Internal quotation marks omitted.) *State* v. *DeJesus*, supra, 288 Conn. 468. As a result, the uncharged misconduct evidence serves the important roles of providing a "necessary motive or explanation for an otherwise inexplicably horrible crime," helping the jury to determine whether the "defendant has been falsely accused of such shocking behavior." Id., 469–70. These considerations further emphasize the relevance of the 1997 uncharged sexual misconduct evidence. Accordingly, the Appellate Court properly concluded that the trial court did not abuse its discretion in admitting uncharged sexual misconduct evidence that occurred

twelve years prior to the charged conduct because it satisfied the requirements of *DeJesus*.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

[1] We granted the defendant's petition for certification to appeal from the judgment of the Appellate Court, limited to the following issue: "Did the Appellate Court properly conclude that the trial court, in a case alleging sexual assault, did not abuse its discretion in concluding that evidence of uncharged misconduct by the defendant twelve years previously was not 'too remote' for admissibility purposes under *State* v. *DeJesus*, [supra, 288 Conn. 418]?" *State* v. *Acosta*, 320 Conn. 922, 132 A.3d 1095 (2016).

[2] The relevant time interval for measuring remoteness is the time elapsed between the charged and uncharged misconduct. See, e.g., *State* v. *Romero*, 269 Conn. 481, 498, 849 A.2d 760 (2004) (discussing remoteness in context of nine year gap between charged and uncharged conduct).

[3] Because we conclude that the trial court did not abuse its discretion, we need not address the defendant's argument that the admission of the uncharged sexual misconduct evidence by the trial court amounts to harmful error.

[4] In accordance with our policy of protecting the privacy interests of the victims of sexual assault and the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

[5] As noted by the Appellate Court, the state's proffer of evidence with respect to the 2006 incident provided: " 'On or about July, 2006 . . . when [the witness C] was approximately ten years of age, the defendant pulled his penis out of his pants and told her [to] hold his penis because it was like candy and to suck his penis.' C's testimony at trial corroborated the facts as alleged in the state's proffer.' " *State* v. *Acosta*, supra, 162 Conn. App. 777 n.2. The Appellate Court also observed that, like the other victims, C was a prepubescent family member. Id., 783.

[6] Under this rule, this court routinely sustained the admission of uncharged sexual misconduct evidence where the three factors warranted it. See, e.g., *State* v. *Jacobson*, 283 Conn. 618, 635, 930 A.2d 628 (2007) (sustaining trial court's admission of testimony about uncharged incident by mother of child with whom defendant had slept in same bed).

[7] Although these relevancy factors may be traced to earlier cases, as discussed, we attribute them to *DeJesus* throughout this opinion, as it has become customary to do so. See, e.g., *State* v. *Devon D.*, 321 Conn. 656, 665–66, 138 A.3d 849 (2016) (citing to *DeJesus* in summarizing three relevancy factors).

[8] Although this court has evaluated remoteness claims several times since *DeJesus*, none of those cases afforded an opportunity to consider a bright line limitation for remoteness, because the intervals between the charged and uncharged misconduct were too short. See *State* v. *Devon D.*, 321 Conn. 656, 667, 138 A.3d 849 (2016) (misconduct within span of less than four years); *State* v. *George A.*, 308 Conn. 274, 297, 63 A.3d 918 (2013) (four year interval); *State* v. *Gupta*, 297 Conn. 211, 215–220, 998 A.2d 1085 (2010) (misconduct within one year span); *State* v. *Johnson*, 289 Conn. 437, 455, 958 A.2d 713 (2008) (incidents within fifteen months of each other). One exception is *State* v. *Snelgrove*, 288 Conn. 742, 761–62, 954 A.2d 165 (2008), in which fourteen years had elapsed between the charged and uncharged incidents. This court observed that, although "ordinarily, a gap of fourteen years would raise serious questions as to whether the prior misconduct was too remote in time . . . [t]he defendant was incarcerated for eleven of those years . . . . [W]here prior misconduct evidence is otherwise admissible, an extended temporal gap between the prior misconduct and the charged conduct does not render the prior misconduct evidence irrelevant if the defendant was incarcerated during that time." Id.

[9] For this reason, we also are not persuaded by the defendant's argument that the 1997 uncharged sexual misconduct is inadmissible because it is substantially less egregious than the charged misconduct.