# STATE OF CONNECTICUT *v.* SAMUEL U.*
## (SC 20740)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Cradle, Js.

*Syllabus*

Convicted, after a trial to the court, of the crimes of sexual assault in the
first degree and risk of injury to a child in connection with his sexual
abuse of the victim, T, the defendant appealed to this court. The abuse
occurred between 2007 and 2010, during which time T was between
seven and ten years old. Prior to trial, the state provided written notice
of its intent to present evidence of four episodes of the defendant's
prior sexual misconduct to prove his propensity to engage in such
conduct, pursuant to the relevant provision (§ 4-5 (b)) of the Connecticut
Code of Evidence. The notice did not identify the victims of the prior
misconduct but included the approximate dates when the misconduct
occurred and the nature of the misconduct, the respective dates of
the defendant's convictions for each episode, and the docket numbers
associated with those convictions. The third entry in the notice con-
cerned the sexual assault of a four year old female in 1993, which
involved digital penetration and vaginal and anal intercourse. The defen-
dant did not contest the adequacy of the notice before trial. At trial, the
state offered the testimony of S, the defendant's daughter, as propensity
evidence. S testified that, in 1993, when she was four years old, the
defendant had rubbed her genitals and had rubbed his genitals against
her genitals. Defense counsel objected to the admission of S's testimony
on the grounds that the events S described were too remote in time to

* In accordance with our policy of protecting the privacy interests of the
victims of sexual abuse and the crime of risk of injury to a child, we decline
to use the defendant's full name or to identify the victims or others through
whom the victims' identities may be ascertained. See General Statutes
§ 54-86e.

State *v.* Samuel U.

be relevant and that S and T were not similar victims. The trial court overruled defense counsel's objection and admitted S's testimony into evidence, concluding, inter alia, that the misconduct S described was sufficiently proximate in time to the misconduct involving T. In so concluding, the court relied on a recording of an interview that had been admitted into evidence, in which the defendant admitted to the police that he had been incarcerated from approximately 1993 to 2003 in connection with prior sexual misconduct. The court reasoned that, because the defendant was incarcerated for ten of the fourteen years between the instances of misconduct involving S and T, during which period he was prevented from engaging in sexual misconduct, the temporal window was narrowed, and S's testimony, therefore, was not too remote in time. On the defendant's appeal from the judgment of conviction, *held*:

1. The defendant's unpreserved claim that his right to due process was violated by virtue of the admission of S's testimony, insofar as the state's notice of the sexual misconduct involving S that it planned to offer was inadequate and failed to conform to the evidence elicited at trial, was not of constitutional magnitude and, therefore, failed under the second prong of the test set forth in *State* v. *Golding* (213 Conn. 233):

In *State* v. *O'Brien-Veader* (318 Conn. 514), this court concluded that criminal defendants have no constitutional right to the prior disclosure of evidence of uncharged misconduct evidence, and, regardless of whether that conclusion was dictum, as the defendant claimed, this court agreed with the conclusion in *O'Brien-Veader*, as well as in other Appellate Court decisions, that notice of the state's intent to use prior, uncharged misconduct evidence falls within the category of discovery and is regulated by the rules of practice.

Moreover, this court explained that broad deference is afforded to trial courts on matters relating to the admission of uncharged misconduct evidence because they involve evidentiary questions that do not implicate a defendant's due process rights, this court's determination that the defendant's claim did not implicate any constitutional right was in line with the decisions of other courts that have determined whether the federal constitution compels any particular notice based due process procedures in connection with the admission of other misconduct evidence, and the defendant failed to provide any authority to support his argument that the federal constitution requires pretrial notice of uncharged misconduct that the state seeks to introduce at trial.

Accordingly, this court determined that, so long as evidence of other sexual misconduct has been properly admitted under a rule allowing propensity evidence, consideration of such evidence does not infringe on a defendant's due process rights.

State *v.* Samuel U.

2. The defendant could not prevail on his claim that the trial court had abused its discretion in admitting into evidence the testimony concerning the defendant's prior sexual misconduct involving S:

With respect to the defendant's claims that it was improper for the trial court to find that S's testimony corresponded to the third entry in the state's notice, insofar as the notice did not identify the victim as S and insofar as S's testimony did not align with the sexual misconduct described in the notice, the failure of the defendant or defense counsel to contest that S was the victim described in the third entry was fatal to his challenge, and, moreover, both the parties and the trial court treated the third entry in the state's notice as describing the sexual abuse involving S, the notice included the docket number associated with the prior prosecution of the defendant for his sexual abuse of S, there was no reason for the trial court to believe that the defense was caught off guard when S took the witness stand, and there were clear parallels between what was described in the notice and S's testimony, including the year and the victim's age when the misconduct occurred.

Moreover, the defendant could not prevail on his claim that the trial court had abused its discretion in admitting S's testimony on the ground that the misconduct involving S had occurred fourteen years before the charged conduct occurred and that it therefore was too remote in time to be relevant.

The trial court's decision to admit S's testimony was based in part on its finding that the defendant had been incarcerated continuously for ten of the fourteen years between the instances of sexual misconduct with S and T, that finding was not clearly erroneous insofar as the evidence supported it, under the law of this state, if a defendant has been incarcerated for a portion of time between two separate incidents of sexual misconduct, it is appropriate to measure temporal proximity by considering the time that the defendant was not incarcerated, which, in this case, was approximately four years, and the appellate courts of this state consistently have held that such a length of time does not render the prior misconduct too remote in time from the conduct at issue.

Furthermore, the defendant did not dispute the trial court's finding that the incidents of misconduct with S and T involved similar offenses, as S and T both recounted that the defendant had rubbed their genitals and that the misconduct occurred at his home when his long-term partner was not present, or the trial court's finding that S and T were similar victims, insofar as both S and T testified that they had had a familial type relationship with the defendant and that they were both young when the misconduct took place.

In addition, S's testimony was relevant and not unduly prejudicial, as the number of parallels between her testimony and that of T rendered S's testimony highly probative of the defendant's propensity to engage

State *v.* Samuel U.

in criminal sexual misconduct, S's allegations were no more extreme than T's allegations, and the facts that the case was tried to the court and that the trial judge offered the defense the opportunity to have another judge hear and rule on the admissibility of S's testimony eliminated any concerns about undue prejudice.

(*Two justices concurring separately in one opinion*)

Argued September 11—officially released November 28, 2023

*Procedural History*

Substitute information charging the defendant with two counts of the crime of sexual assault in the first degree and three counts of the crime of risk of injury to a child, brought to the Superior Court in the judicial district of Hartford and tried to the court, *Gold, J.*, which granted in part and denied in part the defendant's motion for a judgment of acquittal; thereafter, judgment of guilty of one count of sexual assault in the first degree and two counts of risk of injury to a child, from which the defendant appealed to this court. *Affirmed.*

*Dina S. Fisher*, assigned counsel, for the appellant (defendant).

*James A. Killen*, senior assistant state's attorney, with whom, on the brief, were *Sharmese L. Walcott*, state's attorney, and *Anthony Bochicchio*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

D'AURIA, J. In this direct appeal, we are again presented with a challenge to a trial court's admission of sexual misconduct evidence beyond that which the state has charged in a particular prosecution. The defendant, Samuel U., appeals from his conviction of one count of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (2). Specifically, he claims that the state infringed on his due process rights by providing a notice of its intent to offer evidence of his other sexual miscon-

State *v.* Samuel U.

duct that was inadequate and did not conform to the evidence elicited at trial. The defendant also contends that the trial court abused its discretion under § 4-5 (b) of the Connecticut Code of Evidence by admitting the testimony of his daughter, S, concerning sexual misconduct he engaged in with her fourteen years before the charged conduct in the present case. We disagree with both of the defendant's claims and affirm the trial court's judgment.

The following facts and procedural history relate to the defendant's claims on appeal. After a bench trial, the trial court found that, from 2007 through 2010, the defendant had on numerous occasions engaged in sexual misconduct with the victim, T. During this time frame, T was between the ages of seven and ten, and the defendant was in a long-term relationship with T's grandmother, M. T would see the defendant when visiting M, as the defendant resided with M. The defendant's sexual misconduct with T occurred either in his car or in M's home when M was not present.

The defendant's sexual misconduct included performing cunnilingus on T, rubbing her vagina, kissing her breasts, and forcing her to touch his penis. In 2016, T confided in her school therapist about these episodes of the defendant's sexual misconduct. As a mandated reporter, her therapist notified the police about T's disclosures.

Pursuant to § 4-5 (b) of the Connecticut Code of Evidence, and more than eight months before trial, the state provided the defendant with a "Notice of Intent to Present Uncharged Misconduct," stating that it would "present evidence of other sexual misconduct to prove propensity . . . ." The notice indicated that the state planned to present evidence of four episodes of the defendant's other sexual misconduct with unspecified victims. The notice included the approximate dates of

State *v.* Samuel U.

the misconduct, the nature of the misconduct, and the respective dates of the defendant's resulting convictions for each episode of misconduct. Most relevant to the present appeal is the third entry on that notice, which provided: "The state intends to present evidence that, on August 20, 1993, the defendant digitally penetrated and had vaginal and anal intercourse with the victim. The victim was a [four] year old female. The defendant was convicted, on June 17, 1994, of sexual assault in the first degree and risk of injury in violation of [§§] 53a-70 and 53-21 . . . ." The notice did not identify the victim of those crimes, but it did contain the docket number of the criminal case.[1] The defendant did not contest the adequacy of this notice before trial.[2]

At trial, the state offered the testimony of S as propensity evidence under § 4-5 (b) of the Connecticut Code of Evidence.[3] S testified that the defendant's sexual misconduct with her had taken place in 1993, when she was four years old. The defendant's conduct included rubbing S's genitals, as well as rubbing his genitals against hers. S recounted that the defendant's misconduct ceased that same year, after she told a family member what she had endured.

---

[1] The state's notice, which it filed in the trial court, did not provide the names of the victims of the defendant's other sexual misconduct. The state explains in its brief to this court that "unnecessarily proffering" greater identifying information would "[run] the risk of running afoul of [General Statutes] § 54-86e," which protects the identities of the victims of the crime of risk of injury to a child as well as sexual assault victims.

[2] The other three incidents described in the notice concerned the defendant's (1) touching the breasts and vaginal area of a mentally impaired nineteen year old female in 1986, (2) touching the breasts and vaginal area of a nine year old female in 1988, and (3) performing cunnilingus on a nine year old female in 1993.

[3] Even though each episode of sexual misconduct resulted in a conviction, the state sought to admit this evidence under § 4-5 (b) of the Connecticut Code of Evidence rather than § 6-7 of the Connecticut Code of Evidence, which permits, for impeachment purposes, the admission of evidence of the conviction of crimes that are punishable by imprisonment for more than one year.

State *v.* Samuel U.

Just as he had not before trial, when the state sought to admit S's testimony at trial, the defendant did not raise any claim concerning the adequacy of the notice of other sexual misconduct. Defense counsel did argue, however, that S's testimony was inadmissible because (1) fourteen years had elapsed between the other sexual misconduct involving S and T's allegations, rendering S's experiences too remote in time to be relevant, and (2) S and T were not similar victims in that S is the defendant's blood relative and T is not, and T was "much older" than S (seven to ten years old as opposed to four years old) when the defendant's sexual misconduct with each of them occurred.

Given that the defendant had elected a bench trial, the trial court, before hearing and ruling on the admissibility of S's testimony, offered the defendant the opportunity to have another judge listen to her testimony and rule on its admissibility. Defense counsel responded that there was no need for the court to make these arrangements because the defendant did not want S to have to testify twice, and he was "confident, if the court does exclude [the testimony], the court won't consider it . . . in rendering a verdict."

After hearing the testimony and the parties' arguments, the trial court overruled defense counsel's objection, finding that the sexual misconduct S had described was sufficiently proximate in time to T's allegations, given that the defendant had been incarcerated for a significant portion of the fourteen years in question. The trial court also reasoned that the locations and manner of the sexual misconduct S and T described were sufficiently similar, given that both recalled the defendant rubbing their genitals at his home. Both also had a familial type relationship to the defendant and were similar in age at the time of the sexual misconduct.

The trial court found the defendant guilty of one count of sexual assault in the first degree and two

State *v.* Samuel U.

counts of risk of injury to a child and sentenced him to a term of imprisonment of twelve years with a mandatory minimum of five years to serve followed by five years of special parole. The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b) (3).

I

We begin with the defendant's claim that the trial court violated his due process rights by admitting S's testimony without adequate notice. The defendant concedes that he did not raise this claim in the trial court. He therefore seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). Most relevant to our resolution of this claim is the defendant's assertion that it is of constitutional magnitude under *Golding*'s second prong because "[t]he essence of due process is the requirement that a person in jeopardy of a serious loss [be given] notice of the case against him and [an] opportunity to meet it."[4] (Internal quotation marks omitted.) *State* v. *Lopez*, 235 Conn. 487, 493, 668 A.2d 360 (1995). The state responds that the defendant has cited no legal authority to support his argument that, to safeguard due process rights, either the state must provide specific details in a pretrial notice about other sexual misconduct evidence or the trial court must conduct a hearing.[5] To the contrary,

_____

[4] Although the defendant, in his brief to this court, references due process rights under the Connecticut constitution, he provides no independent state constitutional analysis under *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1125 (1992). See *State* v. *Nash*, 278 Conn. 620, 623–24 n.4, 899 A.2d 1 (2006). Therefore, we consider the defendant's claims only under the federal constitution.

[5] The defendant also contends that the trial court failed to conduct a pretrial hearing before admitting evidence of his other sexual misconduct. The trial court functionally provided the defendant with the opportunity for a pretrial hearing by offering him the choice of having another judge rule on the admissibility of S's testimony. This procedure would have ensured that a neutral arbiter made this evidentiary ruling, but defense counsel explicitly stated that this safeguard was unnecessary. Thus, even if we

State *v.* Samuel U.

the state argues that *State* v. *O'Brien-Veader*, 318 Conn. 514, 545, 122 A.3d 555 (2015), controls the resolution of this claim because this court held in that case that criminal defendants do not have a constitutional right to pretrial notice of any inculpatory, uncharged misconduct evidence that the state plans to offer into evidence. We agree with the state that this claim fails under the second prong of *Golding*.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see also *In re Yasiel R.*, supra, 317 Conn. 781 (modifying third condition of *Golding*). The constitutional claim the defendant advances in the present case is one of procedural due process. This court has stressed that, "[f]or more than a century the central meaning of procedural due process has been clear: [p]arties whose rights are to be affected are entitled to be heard; and in order that they may enjoy that right they must first be notified.

deemed a pretrial hearing necessary for the sake of due process, in the present case, this issue would not have been reviewable under *Golding*, as the defendant affirmatively waived a separate hearing on the admissibility of S's testimony. See, e.g., *State* v. *Hampton*, 293 Conn. 435, 448–49, 988 A.2d 167 (2009) ("[a] constitutional claim that *has* been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial" (emphasis in original; internal quotation marks omitted)).

State *v.* Samuel U.

. . . It is equally fundamental that the right to notice and an opportunity to be heard must be granted at a meaningful time and in a meaningful manner.'' (Internal quotation marks omitted.) *In re DeLeon J.*, 290 Conn. 371, 378, 963 A.2d 53 (2009). To trigger procedural due process protections, however, the property or liberty interest at stake must be ''cognizable under the due process clause . . . .'' (Internal quotation marks omitted.) *Frillici* v. *Westport*, 231 Conn. 418, 437, 650 A.2d 557 (1994). ''[D]ue process is a flexible principle that calls for . . . procedural protections [that] the particular situation demands.'' (Internal quotation marks omitted.) *In re DeLeon J.*, supra, 378. Therefore, when analyzing whether a trial court has provided adequate procedural due process protections, we consider the circumstances at hand to ensure that the defendant had a meaningful opportunity to present his case. See id.

''[I]t can be difficult to distinguish between a mere evidentiary misstep and a potential due process violation.'' *State* v. *O'Brien-Veader*, supra, 318 Conn. 534. However, ''[d]ue process is not to be regarded as a giant constitutional vacuum cleaner which sucks up any claims of error . . . .'' *State* v. *Kurvin*, 186 Conn. 555, 564, 442 A.2d 1327 (1982). ''[I]t would trivialize the constitution to transmute a nonconstitutional claim into a constitutional claim simply because of the label placed on it by a party or because of a strained connection between it and a fundamental constitutional right.'' (Internal quotation marks omitted.) *State* v. *Jenkins*, 271 Conn. 165, 190, 856 A.2d 383 (2004).

The defendant argues that notice of the other sexual misconduct the state intended to offer at trial is required as a matter of due process. This court previously has made clear, however, that ''there is no constitutional right to the disclosure of uncharged misconduct evidence, which is inculpatory in nature.'' *State* v. *O'Brien-Veader*, supra, 318 Conn. 545; see also *State* v. *Colon*,

State *v.* Samuel U.

71 Conn. App. 217, 240–41, 800 A.2d 1268 (in response to arguments that state "was required to disclose its intent to use prior misconduct evidence" by certain date, court held that there is "no constitutional right to the disclosure of such evidence"), cert. denied, 261 Conn. 934, 806 A.2d 1067 (2002). The defendant responds that *O'Brien-Veader* does not bind us because our discussion of this issue in that case constituted nonbinding dictum. See *State* v. *Courchesne*, 296 Conn. 622, 738 n.79, 998 A.2d 1 (2010) (defining obiter dicta).

Regardless of whether our discussion of the notice issue in *O'Brien-Veader* was dictum, we agree with our conclusion in that case, and with earlier decisions of the Appellate Court, that prior notice of the state's intent to use prior misconduct evidence falls more properly within the category of discovery. Accordingly, that disclosure of evidence is regulated by the rules of practice. See Practice Book § 40-7; see also *State* v. *O'Brien-Veader*, supra, 318 Conn. 544–45; *State* v. *Colon*, supra, 71 Conn. App. 240–41; *State* v. *Fraenza*, 9 Conn. App. 228, 236–37, 518 A.2d 649 (1986), cert. denied, 202 Conn. 803, 519 A.2d 1207 (1987), and cert. denied sub nom. *State* v. *Diaz*, 202 Conn. 803, 519 A.2d 1206 (1987). As we have explained previously, "[w]e leave it to the sound discretion of our trial courts to determine the precise procedure to employ in a particular case, consistent with their duty to safeguard against undue prejudice in cases involving uncharged misconduct evidence." (Internal quotation marks omitted.) *State* v. *Juan J.*, 344 Conn. 1, 24 n.12, 276 A.3d 935 (2022). We give broad deference on these matters in part because they are evidentiary questions that do *not* implicate due process rights. Compare *State* v. *Patrick M.*, 344 Conn. 565, 600, 280 A.3d 461 (2022) ("[w]e defer to the ruling of the trial court because of its unique position to [observe] the context in which particular evidentiary issues arise" (internal quotation marks omitted)), with *Anthony A.*

State *v.* Samuel U.

v. *Commissioner of Correction*, 339 Conn. 290, 311–12, 260 A.3d 1199 (2021) ("procedural due process rights [present] a question of law over which our review is plenary"). Not only is our determination that the defendant's claim does not implicate any constitutional right consistent with our own case law, but our research reveals that it is in line with the conclusion of every court that has analyzed whether the federal constitution compels any particular notice based due process procedures before admitting evidence of other misconduct. See, e.g., *State* v. *Norton*, 151 Idaho 176, 182, 254 P.3d 77 (App. 2011) (requirements for admissibility and notice of other crimes evidence are "required by a rule of evidence" but "are not of constitutional import"), review denied, Idaho Supreme Court, Docket No. 37241-2009 (July 7, 2011); *McDonald* v. *State*, 179 S.W.3d 571, 578 (Tex. Crim. App. 2005) ("no constitutional error is involved when evidence of uncharged misconduct is admitted without notice"); see also *United States* v. *Wilson*, Docket No. CR 09-1465 JB, 2010 WL 2954562, *8 (D.N.M. June 18, 2010) (court found no cases discussing notice based due process rights concerning admissibility of other crimes evidence). In fact, numerous federal courts have ruled that admitting evidence of other crimes in child molestation cases does not violate a defendant's *substantive* due process rights. See, e.g., *United States* v. *LeMay*, 260 F.3d 1018, 1027 (9th Cir. 2001), cert. denied, 534 U.S. 1166, 122 S. Ct. 1181, 152 L. Ed. 2d 124 (2002); *United States* v. *Mound*, 149 F.3d 799, 800–801 (8th Cir. 1998), cert. denied, 525 U.S. 1089, 119 S. Ct. 842, 142 L. Ed. 2d 697 (1999); *United States* v. *Castillo*, 140 F.3d 874, 883 (10th Cir. 1998). These courts have emphasized that rule 403 of the Federal Rules of Evidence functions as a crucial safeguard to ensure that "potentially devastating evidence of little probative value will not reach the jury . . . ." *United*

State *v.* Samuel U.

*State*s v. *LeMay*, supra, 1026;[6] see *McLean* v. *State*, 934 So. 2d 1248, 1260–61 (Fla. 2006). None suggests that this safeguard is constitutionally required.

This lack of authority leads the defendant to direct us to statutes and cases from other states, along with rule 414 of the Federal Rules of Evidence, all of which detail various notice requirements for the admission of uncharged misconduct evidence.[7] Some of the procedures other states have adopted—by rule or by case law—may be salutary. But the defendant has failed to provide any authority—and we are aware of none—

---

[6] This court has made clear that the Connecticut Code of Evidence functions analogously: "Much like the Federal Rules of Evidence, under our Code of Evidence, the protection against unfair prejudice emanates not from a requirement of a preliminary finding of fact by the trial court, but from four other sources: first, from the requirement under § 4-5 (b) that the evidence satisf[ies] one of the prior misconduct exceptions and, thus, [is] offered for a proper purpose; second, from the relevancy requirement under § 4-1; third, from the assessment that the trial court must make under § 4-3 to determine whether the probative value of the similar acts evidence is outweighed by its potential for unfair prejudice; and fourth, from the limiting instructions the trial court is required to give the jury under § 1-4 that the evidence is to be considered only for the proper purpose for which it was admitted." (Footnote omitted.) *State* v. *Aaron L.*, 272 Conn. 798, 823, 865 A.2d 1135 (2005). With this in mind, we emphasize that "the existing structure of our rules of evidence" helps to safeguard due process rights but does not create those rights. Id., 824.

[7] In his brief to this court, the defendant cites the following cases, statutes, and rules of evidence: 725 Ill. Comp. Stat. Ann. 5/115-7.3 (Cum. Supp. 2020); Ariz. R. Crim. P. 15.1 (West Cum. Supp. 2020); Ariz. R. Evid. 404 (West 2022); Cal. Evid. Code § 1108 (Deering Supp. 2021); *State* v. *Ferrero*, 229 Ariz. 239, 274 P.3d 509 (2012); *State* v. *Campbell*, 861 N.W.2d 95 (Minn. 2015); *State* v. *Ness*, 707 N.W.2d 676 (Minn. 2006); *State* v. *Kennedy*, 585 N.W.2d 385 (Minn. 1998); *State* v. *Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965); *State* v. *Williams*, 548 S.W.3d 275 (Mo.), cert. denied,     U.S.    , 139 S. Ct. 606, 202 L. Ed. 2d 439 (2018); *State* v. *Willis*, 225 N.J. 85, 137 A.3d 452 (2016); *People* v. *Leonard*, 29 N.Y.3d 1, 73 N.E.3d 344, 51 N.Y.S.3d 4 (2017); *People* v. *Cass*, 18 N.Y.3d 553, 965 N.E.2d 918, 942 N.Y.S.2d 416 (2012); *People* v. *Molineux*, 168 N.Y. 264, 61 N.E. 286 (1901); *Commonwealth* v. *Cosby*, 252 A.3d 1092 (Pa. 2021), cert. denied,     U.S.    , 142 S. Ct. 1230, 212 L. Ed. 2d 234 (2022); *Commonwealth* v. *Boczkowski*, 577 Pa. 421, 846 A.2d 75 (2004); *State* v. *Gresham*, 173 Wn. 2d 405, 269 P.3d 207 (2012); *State* v. *Thang*, 145 Wn. 2d 630, 41 P.3d 1159 (2002).

to support his argument that the federal constitution *requires* pretrial notice of uncharged misconduct the state seeks to admit at trial. Rather, so long as evidence of other crimes has been properly admitted under a rule allowing propensity evidence, the consideration of this evidence does not infringe on a defendant's procedural or substantive due process rights. Therefore, the defendant's notice claim is not of constitutional magnitude and fails to satisfy the second prong of *Golding*.

II

Having established that the defendant had no constitutional right to pretrial notice of other sexual misconduct evidence, we next consider whether the trial court's admission of S's testimony constituted an abuse of discretion. "[T]he trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be made in favor of the correctness of the trial court's ruling, and we will upset that ruling only for a manifest abuse of discretion." (Internal quotation marks omitted.) *State* v. *Calabrese*, 279 Conn. 393, 407, 902 A.2d 1044 (2006). "In determining whether there has been an abuse of discretion, the ultimate issue is whether the [trial] court could reasonably conclude as it did." (Internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 330 Conn. 1, 33, 190 A.3d 851 (2018), cert. denied sub nom. *Greene* v. *Semple*, U.S. , 139 S. Ct. 1219, 203 L. Ed. 2d 238 (2019). The defendant challenges the trial court's ruling in two ways.

First, the defendant raises an argument he did not raise at trial, namely, that it was improper for the trial court to find that S's testimony corresponded to the third entry in the state's notice of intent because the notice did not identify the victim by name as the defen-

State *v.* Samuel U.

dant's daughter. Related to this contention, he argues that S's testimony did not align with the sexual misconduct enumerated in the notice. For example, the notice described digital penetration, vaginal intercourse, and anal intercourse whereas S recounted genital rubbing during her testimony. We are not persuaded by either of these arguments.

This court reviews a trial court's determination to admit evidence for abuse of discretion but analyzes any factual findings that form the basis for those evidentiary decisions under the clearly erroneous standard of review. See, e.g., *State* v. *Ray*, 290 Conn. 602, 631 n.17, 966 A.2d 148 (2009); *State* v. *DeJesus*, 288 Conn. 418, 440–41, 953 A.2d 45 (2008). "A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *In re Jacob W.*, 330 Conn. 744, 770, 200 A.3d 1091 (2019).

Given our holding in part I of this opinion that pretrial notice of other crimes evidence does not implicate a constitutional right, the defendant's failure to contest that S was the victim described in the third entry of the state's notice is fatal to this part of his evidentiary challenge. See *State* v. *Fay*, 326 Conn. 742, 766, 167 A.3d 897 (2017) (if *Golding* does not apply, "[g]enerally, this court is not required to consider a claim unless it was distinctly raised at the trial or arose subsequent to the trial" (internal quotation marks omitted)). We observe that both parties and the trial court treated the third entry in the state's notice as describing sexual abuse inflicted on S. Specifically, the trial court, when ruling on the admissibility of S's testimony, recounted that the defendant had been incarcerated from 1993 to 2003, representing "the sentence he received for his

State *v.* Samuel U.

misconduct with S'' and that, therefore, he was incarcerated for ''ten of the fourteen years between [S's] victimization and [T's] victimization . . . .'' This finding is consistent with the third entry in the state's notice, which explained that the defendant had been convicted of assaulting a four year old female in 1993. Shortly after, the trial court indicated that ''the defendant only had four years between his release from prison for his victimization of [S] and his commencement of the alleged victimization [of] T . . . .''

It speaks volumes that defense counsel failed, at any time, to claim that the third entry—including the docket number provided—did not describe S, or in any way to contest the adequacy of the state's notice as it concerned S.[8] The trial court had no reason to believe that the defendant was caught off guard when S took the witness stand. Further, although the sexual misconduct included in the notice did not align precisely with what S testified to at trial—an unremarkable occurrence in cases involving sexual abuse during childhood—there were clear parallels. As mentioned previously, the notice described sexual misconduct in 1993 that involved a four year old female, and S testified about the defendant's sexually abusing her in 1993, when she was four years old. The trial court reasonably inferred that the

---

[8] Of course, the docket numbers the state included in its notice for each of the defendant's four convictions—including entry three—might solve this riddle. For example, the defendant likely was, and is, in a position to know whether his conviction in docket number CR93-448032-T, on June 17, 1994, was for sexually assaulting his daughter, S. The defendant did not object before the trial court on the ground that he was never convicted of such a crime on such a date, or that he was never convicted of having assaulted S. Similarly, having provided this notice, the state should have been able to confirm on the record that S was indeed the victim of that crime, for which the defendant was convicted. Appellate counsel for both the defendant and the state professed no knowledge of the facts underlying this conviction, and both further confessed not to have conducted any search to find out. Our own search for the file associated with this docket number was unsuccessful, considering the Judicial Branch's records retention and destruction policy.

State *v.* Samuel U.

notice referred to S because the defendant gave no indication that he was unprepared for S's testimony. Based on the record below, we cannot conclude that the trial court's finding that the third entry in the state's notice describing the defendant's abuse of S was clearly erroneous.

The defendant's second contention, which he did preserve at trial, is that the trial court abused its discretion by admitting S's testimony because the sexual misconduct she described took place fourteen years before the charged conduct occurred. The defendant argues that the trial court abused its discretion by engaging in speculation when considering whether his period of imprisonment served to make his alleged sexual misconduct with S sufficiently proximate in time to his alleged sexual assault of T. Specifically, he argues that the trial court's finding that the defendant had been incarcerated for ten years between the incidents involving S and T was clearly erroneous because it was based on comments he made in an interview with the police that were too ambiguous to establish that he was continuously incarcerated from 1993 until 2003. We disagree.

The following facts are pertinent to this claim. Without objection from either party, the trial court admitted into evidence a video-recorded interview that detectives had conducted with the defendant in which he told them that he had been incarcerated for "a lot of time" as a result of prior sexual misconduct with a child. Specifically, he related that he was incarcerated in about 1993 and released from prison in 2003. Although the defendant perhaps did not make crystal clear in this interview that his incarceration from 1993 until 2003 was continuous, the trial court found that the defendant had stated, "either directly or in response to questions of the detectives, that he served a period of incarceration for that earlier incident that started in 1993 and lasted until 2003." From this, the trial court

State *v.* Samuel U.

reasoned that the defendant's incarceration during ten of the fourteen years between his misconduct with S and his misconduct with T, as a practical matter, narrowed the window from fourteen years to about four years after his release from prison.[9] Therefore, the court found that, because he was prevented from engaging in sexual misconduct while imprisoned, S's testimony was not too remote in time to be relevant.

Once again, we find ourselves analyzing factual findings that the trial court used when determining the admissibility of evidence. Accordingly, we address whether the trial court's finding that the defendant had been incarcerated for ten years was clearly erroneous. See, e.g., *State* v. *Ray*, supra, 290 Conn. 631 n.17; *State* v. *DeJesus*, 288 Conn. 441.

Here, there was clearly evidence to support the trial court's finding. Not only did the defendant say in his interview with the police that he was incarcerated beginning in about 1993 and released in 2003, without any mention of intervening periods when he was not in prison, but the defendant's other statements throughout the interview support the finding that his incarceration was continuous. For example, the defendant repeatedly used phrases such as, "during my incarceration," and, when asked by the police when he was released from prison, he quickly responded that this occurred in 2003, never indicating that he had been released from prison at other times during the period in question. This strongly suggested that his incarceration was a singular, continuous period, and we cannot say that the trial court's finding to this effect was clearly erroneous.

_____
[9] The trial court also found that the evidence of other sexual misconduct was not unfairly prejudicial because S's allegations were no more severe than those of T. Additionally, the court noted that, because the case was tried to the court, there were no concerns of arousing jurors' emotions, thereby minimizing risks of undue prejudice.

State *v.* Samuel U.

With this factual finding in mind, we turn to whether the trial court abused its discretion in admitting evidence of the defendant's other sexual misconduct. In *State* v. *DeJesus*, supra, 288 Conn. 418, this court held that, in cases involving sexual misconduct, "[e]vidence of [other sexual] misconduct is admissible [for propensity purposes] if the offense is proximate in time, similar to the offense charged, and committed with persons similar to the prosecuting witness." (Emphasis omitted; internal quotation marks omitted.) Id., 466. Citing "strong public policy reasons," this court in *DeJesus* explained that sexual misconduct is often a behavioral pattern, making past misconduct highly probative of other conduct. Id., 468, 470. These factors long have served as the predominant framework for considering the admission of other sexual misconduct evidence to establish a common plan or scheme; see, e.g., *State* v. *Esposito*, 192 Conn. 166, 169–70, 471 A.2d 949 (1984); and have since been codified. Conn. Code Evid. § 4-5 (b); see *State* v. *George A.*, 308 Conn. 274, 293, 294 n.21, 63 A.3d 918 (2013).

When considering the interplay of the *DeJesus* factors, "[w]e have indicated that this inquiry should focus [on] each of the three factors, as a single factor will rarely be dispositive." *State* v. *Romero*, 269 Conn. 481, 498, 849 A.2d 760 (2004). Thus, we have not adopted a bright-line rule for the proximate in time *DeJesus* factor. See *State* v. *Acosta*, 326 Conn. 405, 414, 164 A.3d 672 (2017) ("[b]ecause we have repeatedly emphasized the connectedness of the three *DeJesus* relevancy factors, we decline to adopt a [bright-line] rule for remoteness, or a rule that establishes a presumption that after ten years the uncharged conduct is too remote"). Rather, under this factor, "we compare the time with reference to the period between the cessation of the prior misconduct and the beginning of the charged sexual abuse." (Internal quotation marks omitted.) *State* v. *Eddie N.*

*C.*, 178 Conn. App. 147, 159, 174 A.3d 803 (2017), cert. denied, 327 Conn. 1000, 176 A.3d 558 (2018). Further, we have held that the trial court should account for whether the defendant was incarcerated for any part of the relevant period. See *State* v. *Snelgrove*, 288 Conn. 742, 761–62, 954 A.2d 165 (2008); id., 762 ("where prior misconduct evidence is otherwise admissible, an extended temporal gap between the prior misconduct and the charged conduct does not render the prior misconduct evidence irrelevant if the defendant was incarcerated during that time"). Because defendants are most often unable to reengage in similar sexual misconduct while incarcerated, an extended time without having committed such misconduct while incarcerated does not necessarily indicate that the defendant no longer harbors criminal proclivities. See id. (reasoning that, because defendant "continued to be driven by the sexual compulsion that led to the prior offenses after his release from prison," sexual compulsion was "a long-standing feature of the defendant's psyche" that imprisonment temporarily hampered). In sum, under our case law, if a defendant has been incarcerated for a portion of the time between two separate incidents of sexual misconduct it is appropriate for a trial court to measure temporal proximity by considering the time that the defendant was not incarcerated, which, in the present case, was about four years. See id.

We now turn to the second and third *DeJesus* factors, under which the relevant parallels need not be identical for a trial court to hold that the prior misconduct and the misconduct at issue both involve similar conduct and similar victims. See *State* v. *George A.*, supra, 308 Conn. 298 n.24. Some factors that courts have considered when evaluating the significance of the similarities between other sexual misconduct and the sexual misconduct at issue include the frequency and severity of the sexual abuse, and the place where the abuse

State *v.* Samuel U.

occurred, as well as the age and familial status of the victims. See, e.g., *State* v. *Eddie N. C.*, supra, 178 Conn. App. 161–62.

The proximate in time analysis in the present case closely resembles that of *Snelgrove*. In *Snelgrove*, this court ruled that misconduct evidence occurring fourteen years before the charged crime was not too remote in time to be relevant and therefore admissible because the defendant in that case had been incarcerated for eleven of those fourteen years. See *State* v. *Snelgrove*, supra, 288 Conn. 761–62. In the present case, the trial court found that the defendant was incarcerated for ten of the fourteen years between incidents, in essence narrowing the time between the incidents with S and T to approximately four years. Our appellate courts consistently have held that such a length of time does not render prior misconduct too remote in time from the conduct at issue to be admissible. See, e.g., *State* v. *Acosta*, supra, 326 Conn. 415 (twelve years between other sexual misconduct and charged misconduct was proximate in time); *State* v. *Jacobson*, 283 Conn. 618, 632–33, 930 A.2d 628 (2007) (six to ten years between other sexual misconduct and charged misconduct was proximate in time); *State* v. *Romero*, supra, 269 Conn. 498 (nine years between other sexual misconduct and charged misconduct was proximate in time).

Additionally, temporal proximity is only one part of the admissibility calculus. See *State* v. *Romero*, supra, 269 Conn. 498. As we have discussed, the *DeJesus* analysis hinges on the cumulative effect of all three factors, rather than any one in isolation. See *State* v. *Jacobson*, supra, 283 Conn. 631. The defendant does not challenge the trial court's evaluation of the second and third *DeJesus* factors on appeal, and our own consideration of the similarities in the testimony from S and T under these factors further tips the scale in favor of the court's admission of the defendant's other sexual misconduct.

State *v.* Samuel U.

See *State* v. *Romero*, supra, 498.[10] S and T both recount-
ed that the defendant had rubbed their genitals. They
also both testified that the defendant's misconduct had
taken place at his home when his long-term partner
was not present. Thus, as the trial court found, and the
defendant does not dispute, the incidents with S and
the incidents with T involved similar offenses, satisfying
the second *DeJesus* factor. Additionally, S and T both
testified to having a familial type relationship to the
defendant, and both were young girls when the alleged
misconduct took place. Therefore, the trial court appro-
priately considered S and T to be similar victims under
the third prong of *DeJesus*. Given these similarities and
the defendant's own statements about his approxi-
mately ten years of incarceration, we cannot conclude
that the trial court abused its discretion in ruling that
S's testimony was admissible under *DeJesus*.

Finally, although we conclude that the trial court
properly considered these factors, under *DeJesus*, the
court could admit evidence of the defendant's prior
sexual misconduct with S only if it was relevant to
prove the defendant's propensity for engaging in "aber-
rant and compulsive criminal sexual behavior" and if
its probative value outweighed its prejudicial effect.
*State* v. *DeJesus*, supra, 288 Conn. 473. Evidence is
unduly prejudicial when "it tends to have some adverse
effect [on] a defendant beyond tending to prove the

[10] The defendant did not argue before the trial court that the misconduct
alleged by S was unlike that testified to by T, thereby waiving arguments
regarding the second prong of *DeJesus*. He did argue before the trial court
that, under the third *DeJesus* factor, the victims of each of the two incidents
were not sufficiently similar, but he does not renew that argument before
this court. Thus, the only *DeJesus* factor in dispute on appeal is whether
the earlier sexual misconduct with S is proximate in time to the misconduct
alleged in the present case. However, as the other *DeJesus* factors remain
relevant when considering the admissibility of other sexual misconduct
evidence, we will discuss them accordingly. See *State* v. *Romero*, supra, 269
Conn. 498–99.

fact or issue that justified its admission into evidence.'' (Internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 399, 844 A.2d 810 (2004).

In the present case, this kind of evidence at issue is inherently prejudicial, but the number of parallels in the testimony from S and T rendered S's testimony highly probative of the defendant's propensity to engage in criminal sexual misconduct. See *State* v. *DeJesus*, supra, 288 Conn. 469. We therefore conclude that the trial court's admission of S's testimony was not unduly prejudicial. See, e.g., *State* v. *Antonaras*, 137 Conn. App. 703, 722–23, 49 A.3d 783, cert. denied, 307 Conn. 936, 56 A.3d 716 (2012).

Finally, in cases concerning other sexual misconduct evidence, risks of undue prejudice are minimized when the evidence under consideration is ''no more severe or egregious than the conduct for which the defendant was charged.'' *State* v. *Eddie N. C.*, supra, 178 Conn. App. 166. In the present case, S's allegations were no more extreme than T's allegations. Further, the fact that the parties tried this case to the court, rather than before a jury, ameliorated any potential undue prejudice, given the trial court's understanding of the proper rules and procedures to employ. See, e.g., *State* v. *George A.*, supra, 308 Conn. 290. Moreover, the trial court provided the defendant with the option of having another judge listen to S's testimony to determine its admissibility, which would have eliminated any concerns of undue prejudice. Defense counsel explicitly declined this protective measure. See footnote 5 of this opinion. We therefore conclude that the trial court did not abuse its discretion by admitting evidence of the defendant's other sexual misconduct with S.

The judgment is affirmed.

In this opinion ROBINSON, C. J., and MULLINS, ALEXANDER and CRADLE, Js., concurred.

ECKER, J., with whom McDONALD, J., joins, concurring. I agree with the majority that there was no constitutional violation in the present case and that the defendant, Samuel U., therefore cannot prevail on his unpreserved claim that the state's notice of intent to admit evidence of uncharged sexual misconduct was inadequate under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015). I further agree that the trial court did not abuse its discretion in admitting evidence of the defendant's prior sexual abuse of his daughter, S, to establish that he had a propensity to commit the type of crimes with which he was charged. I write separately, however, to highlight the grave dangers posed by the admission of evidence of uncharged sexual misconduct and the concomitant obligation of the state to provide timely, accurate and specific notice of such evidence so that the defendant has a full and fair opportunity to prepare a defense. I encourage the appropriate rule-making committee, whether that be the Code of Evidence Oversight Committee or the Rules Committee of the Superior Court, to consider proposing the adoption of a rule governing the timing and content of the state's notice of disclosure.

Pursuant to our case law and the Connecticut Code of Evidence, evidence of prior uncharged sexual misconduct "is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct" if certain requirements are met. Conn. Code Evid. § 4-5 (b); see, e.g., *State* v. *DeJesus*, 288 Conn. 418, 473, 953 A.2d 45 (2008). I do not doubt that evidence of prior bad acts may be highly probative of the defendant's guilt. But that is precisely the problem—the incriminating impact of the defendant's past transgressions can

State *v.* Samuel U.

impair the fact finder's ability to determine whether the evidence demonstrates, beyond a reasonable doubt, that the defendant committed the crime with which he is charged in *this* case. See, e.g., *State* v. *Antonaras*, 137 Conn. App. 703, 722, 49 A.3d 783 (recognizing that "evidence of child sex abuse is undoubtedly harmful to [a] defendant"), cert. denied, 307 Conn. 936, 56 A.3d 716 (2012). It is no overstatement to say that evidence of prior uncharged misconduct is "the most prejudicial evidence imaginable against an accused." (Internal quotation marks omitted.) *State* v. *McCarthy*, 156 Vt. 148, 155, 589 A.2d 869 (1991). This evidence consequently "can have a devastating effect on the defense." E. Imwinkelried, "The Worst Surprise of All: No Right to Pretrial Discovery of the Prosecution's Uncharged Misconduct Evidence," 56 Fordham L. Rev. 247, 249 (1987); see *United States* v. *Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985) (exclusion of propensity evidence typically is "founded not on a belief that the evidence is irrelevant, but rather on a fear that juries will tend to give it excessive weight, and on a fundamental sense that no one should be convicted of a crime based on his or her previous misdeeds"); *State* v. *Skillicorn*, 367 Or. 464, 478, 479 P.3d 254 (2021) (propensity evidence carries "the risk of unfair prejudice to the accused" because, "[a]mong other [reasons], propensity evidence can cause [fact finders] to convict for crimes other than those charged or [to] give more weight to the evidence than it deserves in assessing . . . guilt of [the] crime charged" (internal quotation marks omitted)). Indeed, empirical evidence suggests that the admission of uncharged misconduct evidence "significantly increases the likelihood of a finding of guilt" and can "effectively [strip] the defendant of the presumption of innocence." E. Imwinkelried, supra, 249.

Because of the devastating impact that uncharged misconduct evidence can have on the defense, proce-

State *v.* Samuel U.

dural safeguards must be employed to ensure that the risk of prejudice is reduced to the greatest extent possible. Timely and adequate notice to the defendant is one critical component of this protection. To minimize the risk of prejudice to the defendant, the federal courts require the government to "(A) provide reasonable notice of any such evidence that the prosecutor intends to offer at trial, so that the defendant has a fair opportunity to meet it; (B) articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose; and (C) do so in writing before trial . . . ." Fed. R. Evid. 404 (b) (3). In sexual assault or child molestation cases, the federal rules are even more stringent. To admit evidence of uncharged sexual misconduct in these types of cases, the government "must disclose it to the defendant, including witnesses' statements or a summary of the expected testimony . . . at least [fifteen] days before trial . . . ." Fed. R. Evid. 413 (b); accord Fed. R. Evid. 414 (b).

Consistent with the federal rules, many of our sister states have enacted rules or statutes requiring the state to provide the defendant with pretrial notice of its intent to admit evidence of uncharged misconduct. Some states have patterned their notice requirements on the Federal Rules of Evidence. See, e.g., Neb. Rev. Stat. § 27-414 (2) (2016); S.D. Codified Laws § 19-19-404 (b) (3) (West 2023); Ala. R. Evid. 404 (b) (3); Colo. R. Evid. 404 (b) (3); N.M. R. Evid. 11-404 (B) (3); N.D. R. Evid. 404 (b) (2) (LexisNexis 2018); Ohio R. Evid. 404 (B) (West Supp. 2021); Pa. R. Evid. 404 (b) (3). Other states have promulgated their own unique pretrial notice requirements. For example, in Florida, "[w]hen the state in a criminal action intends to offer evidence of other criminal offenses . . . no fewer than 10 days before trial, the state shall furnish to the defendant or to the defendant's counsel a written statement of the acts or

State *v.* Samuel U.

offenses it intends to offer, describing them with the particularity required of an indictment or information.'' Fla. Stat. Ann. § 90.404 (2) (d) (1) (West Cum. Supp. 2021). In Illinois, ''[i]n a criminal case in which the prosecution intends to offer evidence [of uncharged misconduct], it must disclose the evidence, including statements of witnesses or a summary of the substance of any testimony, at a reasonable time in advance of trial . . . .'' 725 Ill. Comp. Stat. Ann. 5/115-7.3 (d) (West Cum. Supp. 2020); accord Ill. R. Evid. 404 (c); see also Ariz. R. Evid. 404 (b) (3) (A) and (B) (West 2022) (requiring state to ''make disclosure to the defendant as to such acts [of uncharged misconduct] . . . no later than 45 days before the final trial setting'' and to ''articulate in the disclosure the permitted purpose for which the state intends to offer the evidence and the reasoning that supports the purpose''); Cal. Evid. Code § 1108 (b) (Deering Supp. 2021) (requiring state to ''disclose the evidence to the defendant, including statements of witnesses or a summary of the substance of any testimony that is expected to be offered'').

Pretrial notice of evidence of uncharged misconduct that includes a particularized description of the witness' anticipated testimony or the details of the alleged crimes serves the important purpose of avoiding undue ''surprise'' and ''trial by ambush.'' E. Imwinkelried, supra, 56 Fordham L. Rev. 258. By providing the defense with advance notice of the uncharged misconduct evidence that the state seeks to admit, the defendant is given the opportunity to investigate the accuracy of the evidence, test its reliability, and produce witnesses to contradict, challenge, or rebut the evidence. See id., 258–59. Timely and adequate notice, in short, ''give[s] the defendant an opportunity to meet the prosecution's case'' and to mount an effective defense.[1] Id., 259.

[1] These concerns are not merely hypothetical. Although the defendant's claim of deficient notice is not one of constitutional magnitude under the second prong of *Golding*, the state's notice of intent to introduce evidence

State *v.* Samuel U.

For these reasons, I strongly encourage the adoption of a standardized rule governing the timing and content of the state's notice of disclosure of intent to admit evidence of uncharged misconduct at trial.

––––––––––––––––––––––

of uncharged misconduct in the present case left much to be desired. The notice did not identify the name of the witness (S), summarize her anticipated trial testimony, or accurately describe the acts of uncharged sexual misconduct to which she ultimately testified at trial. I agree with the majority that these deficiencies did not render the testimony of S inadmissible under existing law, but I believe that they illustrate the need for a rule governing the adequacy of the notice that the state must provide.