******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## STATE OF CONNECTICUT *v.* DAREN Y.*
## (SC 20725)

Robinson, C. J., and McDonald, D'Auria, Mullins,
Ecker, Alexander and Dannehy, Js.

*Syllabus*

The defendant appealed from the judgments of conviction of multiple counts of sexual assault in the first degree, sexual assault in the fourth degree, and risk of injury to a child stemming from his alleged sexual abuse of his children B, J, and D. The defendant claimed, inter alia, that the evidence was insufficient to sustain his conviction with respect to certain charges and that the trial court had erred in failing to obtain his knowing and voluntary waiver of his rights under the applicable statute of limitations ((Rev. to 2001) § 54-193a) in connection with his conviction of first degree sexual assault and risk of injury for his conduct involving B. *Held*:

The evidence was insufficient to support the defendant's conviction of sexual assault in the first degree and his vacated conviction of sexual assault in the fourth degree for his conduct involving J because the state did not prove one of the requisite elements of those crimes, namely, that the defendant had touched J's genitals, directly or through her clothing, with his mouth, lips, or tongue, and, accordingly, this court reversed the defendant's conviction of sexual assault in the first degree and upheld the trial court's vacating of his conviction of sexual assault in the fourth degree in connection with the alleged sexual abuse of J.

A criminal defendant's waiver of his rights under a statute of limitations must be knowing and voluntary, and such a waiver will not be presumed when there is no evidence in the record to indicate that the defendant intentionally waived those rights.

The trial court's failure to obtain the defendant's knowing and voluntary waiver of his rights under § 54-193a as to the first degree sexual assault and risk of injury charges for his conduct involving B was a patent error that resulted in a manifest injustice to the defendant, and, accordingly, this court reversed the defendant's conviction of those crimes on the basis of plain error.

The trial court did not commit plain error when it instructed the jury on uncharged sexual misconduct evidence, as it substantially adhered to this court's prior guidance in so instructing the jury.

---

* In accordance with our policy of protecting the privacy interests of the victims of sexual abuse and the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

The trial court did not abuse its discretion in admitting certain evidence of uncharged sexual misconduct as propensity evidence, as it was highly probative of the defendant's propensity to engage in aberrant and compulsive sexual misconduct and resulted in minimal prejudicial effect.

The trial court neither impaired the defendant's constitutional right of confrontation nor abused its discretion in declining to conduct an in camera review of the psychiatric records of J and B and in declining to release the psychiatric records of D.

Argued February 15—officially released August 14, 2024**

*Procedural History*

Substitute information in the first case charging the defendant with the crime of risk of injury to a child, substitute information in the second case charging the defendant with one count of the crime of sexual assault in the first degree and two counts of the crime of risk of injury to a child, and substitute information in the third case charging the defendant with four counts of the crime of risk of injury to a child, two counts of the crime of sexual assault in the fourth degree, and one count of the crime of sexual assault in the first degree, brought to the Superior Court in the judicial district of Tolland, where the cases were consolidated; thereafter, the cases were tried to the jury before *Klatt, J.*; verdicts of guilty; subsequently, the court vacated the convictions as to three counts of risk of injury to a child and one count of sexual assault in the fourth degree and rendered judgments of guilty of two counts of sexual assault in the first degree, one count of sexual assault in the fourth degree and four counts of risk of injury to a child, from which the defendant appealed to this court. *Reversed in part*; *judgments directed in part*; *further proceedings.*

*James B. Streeto*, senior assistant public defender, for the appellant (defendant).

** August 14, 2024, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Meryl R. Gersz*, assistant state's attorney, with whom, on the brief, were *Matthew C. Gedansky*, state's attorney, and *Alison Kubas*, assistant state's attorney, for the appellee (state).

*Opinion*

MULLINS, J. This appeal stems from three separate informations charging the defendant, Daren Y., with various forms of sexual abuse of his three children, B, J, and D (complainants). The cases were consolidated and tried before a jury. After that trial, the defendant was found guilty of two counts of sexual assault in the first degree in violation of General Statutes § 53a-70 (a) (2), two counts of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A),[1] four counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), and three counts of risk of injury to a child in violation of § 53-21 (a) (2). The trial court sentenced the defendant to a total effective term of twenty-five years of incarceration, execution suspended after fifteen years, ten years of which were a mandatory minimum sentence, followed by twenty years of probation.[2]

---

[1] The operative substitute long form information alleged that one of the fourth degree sexual assault crimes was committed sometime between June 11, 2005, and June 11, 2007, and the other crime was committed sometime between June 11, 2009, and June 11, 2011.

Although § 53a-73a has been amended since the events underlying this case; see, e.g., Public Acts 2013, No. 13-28, § 1; Public Acts 2007, No. 07-143, § 2; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of the statute.

[2] At sentencing, the trial court vacated the following convictions. With respect to conduct involving J, the court vacated both convictions of risk of injury to a child under § 53-21 (a) (1) because those convictions constituted the same transaction or act as a separate risk of injury conviction and one conviction for sexual assault in the fourth degree because it was a lesser included offense of sexual assault in the first degree. The court also vacated the conviction of risk of injury to a child in violation of § 53-21 (a) (1) for conduct involving B because the conviction of risk of injury to a child in violation of § 53-21 (a) (2) was the "controlling sentence."

The defendant appeals from the judgments of conviction directly to this court. See General Statutes § 51-199 (b) (3). On appeal, the defendant claims that (1) the evidence was insufficient to sustain his conviction of sexual assault in the first degree or the vacated conviction of sexual assault in the fourth degree arising out of conduct involving J, (2) the trial court erred in failing to obtain the defendant's knowing and voluntary waiver of his rights under the statute of limitations as to the first degree sexual assault and risk of injury charges arising out of conduct involving B, (3) the trial court erred in admitting certain sexual misconduct evidence because the prejudicial effect of that evidence outweighed any probative value, and the court failed to provide the necessary limiting instruction when admitting such evidence, and (4) the trial court erred in declining to release D's psychiatric records and declining to conduct an in camera inspection of B's and J's psychiatric records.

We agree with the defendant as to his first two claims. First, with respect to the conduct involving J, there was insufficient evidence to sustain the defendant's conviction of sexual assault in the first degree or the vacated conviction of sexual assault in the fourth degree. Second, with respect to the conduct involving B, the convictions of sexual assault in the first degree and risk of injury to a child must be reversed for plain error because the trial court failed to obtain the defendant's knowing and voluntary waiver of the statute of limitations. Accordingly, we reverse the judgments with respect to those charges. Consequently, those cases are remanded with direction to render judgments of acquittal on those charges and for resentencing. We reject the defendant's two other claims and affirm the judgments in all other respects.

The following facts, which the jury reasonably could have found, and procedural history are relevant to our

resolution of this appeal. In 2019, the defendant's adult children, M, B, D, and J, gathered and disclosed to one another that the defendant had sexually abused them at various points throughout their childhoods. Following their discussion, the complainants disclosed the abuse to their mother. Subsequently, the complainants' mother returned home and confronted the defendant; she directed him to move out of the house and, ultimately, divorced him.

The state charged the defendant with multiple offenses in separate informations relating to each complainant. In one information, the state charged the defendant with one count of risk of injury to a child in violation of § 53-21 (a) (1) for allegedly masturbating in front of D at sometime between 2003 and 2005. In a second information, the state charged the defendant with one count of sexual assault in the first degree in violation of § 53a-70 (a) (2) and two counts of risk of injury to a child in violation of § 53-21 (a) (1) and (2), respectively, for allegedly digitally penetrating B's vagina sometime between 1998 and 2000. In the third information, the state charged the defendant in relation to two incidents involving J. With respect to the first incident, the state charged the defendant with one count each of sexual assault in the first degree in violation of § 53a-70 (a) (2) and sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A), and two counts of risk of injury to a child in violation of § 53-21 (a) (1) and (2), respectively, for allegedly placing his mouth on J's genitals sometime between 2005 and 2007. With respect to the second incident, the state charged the defendant with one count of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A) and two counts of risk of injury to a child in violation of § 53-21 (a) (1) and (2), respectively, for allegedly placing J's hand on his penis sometime between 2009 and 2011.[3]

[3] The state also charged the defendant with crimes for conduct involving M, but she declined to testify. As a result, at sentencing, the state entered

The jury found the defendant guilty on all counts. Additional facts will be set forth as necessary.

## I

## INSUFFICIENT EVIDENCE

We first address the defendant's claim that there was insufficient evidence to support his conviction of sexual assault in the first degree in violation of § 53a-70 (a) (2) and his vacated conviction of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A) for conduct involving J. Specifically, the defendant contends that, because the state did not prove that he had touched J's genitals, directly or through clothing, the state did not establish the requisite elements to prove sexual assault in the first degree or sexual assault in the fourth degree. We agree with the defendant and, thus, reverse the judgment as to the conviction of sexual assault in the first degree and uphold the vacating of the conviction of sexual assault in the fourth degree.

The following well established principles govern our review. "In reviewing the sufficiency of the evidence to support a criminal conviction we apply a [two part] test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether [on] the facts so construed and the inferences reasonably drawn therefrom the [finder of fact] reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Davis*, 324 Conn. 782, 793, 155 A.3d 221 (2017).

In the present case, the defendant was convicted of sexual assault in the first degree, through the act of cunnilingus, in violation of § 53a-70 (a) (2).[4] The defen-

a nolle prosequi on the charges pertaining to M.

[4] In count one of the operative substitute long form information, the state "accuse[d] [the defendant] of the crime of sexual assault in the first degree and charge[d] that, between approximately the dates of June 11, 2005, and June 11, 2007, in Stafford . . . [the defendant] did engage in sexual inter-

dant was also convicted of the lesser included offense of sexual assault in the fourth degree in violation of § 53a-73a (a) (1) (A) for intentionally subjecting J "to sexual contact by placing his mouth on her genitals . . . ."[5] Both charges stem from the same incident.

Section 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ."[6] This court has previously

course; to wit: cunnilingus; with another person under thirteen years of age; to wit: [J] . . . and the defendant was more than two years older than such person, in violation of . . . § 53a-70 (a) (2)."

[5] Although the trial court vacated the defendant's conviction of sexual assault in the fourth degree, stemming from his conduct involving J, as a lesser included offense of sexual assault in the first degree, we nonetheless address whether the evidence was sufficient to sustain the defendant's conviction of sexual assault in the fourth degree because, under certain circumstances, a conviction for a lesser included offense that is vacated on the ground that the defendant has been convicted of the greater offense may be reinstated when, as in the present case, the conviction for the greater offense has been reversed. See, e.g., *State* v. *Polanco*, 308 Conn. 242, 262–63, 61 A.3d 1084 (2013); see also *State* v. *Fisher*, 342 Conn. 239, 243 n.3, 269 A.3d 104 (2022) ("because reversal of [the defendant's] conviction on count four would require reinstatement of [her conviction on] count five, the [defendant's] sufficiency of the evidence argument applies to both counts"). However, we conclude that reinstatement of the lesser included offense of sexual assault in the fourth degree is not appropriate in the present case because we ultimately determine that the evidence was insufficient to support the defendant's conviction of either sexual assault in the first degree or sexual assault in the fourth degree relating to his conduct involving J. Cf. *State* v. *Polanco*, supra, 263 (previously vacated conviction for lesser offense may be reinstated only "if [the defendant's] conviction for the greater offense subsequently is reversed for reasons not related to the viability of the vacated conviction").

[6] General Statutes § 53a-65 (2) defines "sexual intercourse" in relevant part as "vaginal intercourse, anal intercourse, fellatio or cunnilingus between persons regardless of sex. . . ."

Although § 53a-65 (2) has been amended since the defendant's alleged commission of the crimes; see Public Acts 2019, No. 19-189, § 21; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53a-65 (2).

defined cunnilingus as the "sexual stimulation of the clitoris or vulva by the lips or tongue." (Internal quotation marks omitted.) *State* v. *Kish*, 186 Conn. 757, 764, 443 A.2d 1274 (1982). Thus, the state was required to prove beyond a reasonable doubt that the defendant had sexually stimulated J's clitoris or vulva with his lips or tongue. Other states similarly require physical contact between an individual's tongue, lips, or mouth and female genitals to establish cunnilingus. See, e.g., *Johnson* v. *State*, 626 So. 2d 631, 633–34 (Miss. 1993) ("proof of contact, skin to skin, between a person's mouth, lips, or tongue and the genital opening of a woman's body, whether by kissing, licking, or sucking, is sufficient proof of . . . the act of 'cunnilingus' "); *State* v. *Ludlum*, 303 N.C. 666, 674, 281 S.E.2d 159 (1981) (cunnilingus requires "the slightest touching by the lips or tongue of another to any part of the woman's genitalia"); *State* v. *Beaulieu*, 674 A.2d 377, 378 (R.I. 1996) (cunnilingus requires contact between tongue and female genitals).

Additionally, "[a] person is guilty of sexual assault in the fourth degree when: (1) [s]uch person subjects another person to sexual contact who is (A) under thirteen years of age . . . ." General Statutes § 53a-73a (a). "Sexual contact" is defined in the General Statutes as "any contact with the intimate parts of a person for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person or any contact of the intimate parts of the actor with a person for the purpose of sexual gratification of the actor or for the purpose of degrading or humiliating such person." General Statutes § 53a-65 (3).[7] The term

---

[7] Although § 53a-65 (3) has been amended since the defendant's alleged commission of sexual assault in the fourth degree; see, e.g., Public Acts 2019, No. 19-189, § 21; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53a-65 (3).

"[i]ntimate parts" is defined in § 53a-65 (8) as "the genital area . . . groin, anus . . . inner thighs, buttocks or breasts."[8]

In the present case, the state alleged that the sexual contact that occurred and that established sexual assault in the fourth degree was the defendant's "placing his mouth on [J's] genitals . . . ."[9] Having specified its accusation in this way, the state was limited to proving that the defendant had committed this offense in substantially the manner described in the information. In short, in order for this court to sustain a conviction of sexual assault in the first degree for cunnilingus or sexual assault in the fourth degree as the state charged it in this case, the state's evidence must have established that the defendant touched J's genitals with his mouth, lips, or tongue. Toward that end, the only evidence presented by the state during the trial concerning this incident was the testimony of J. The state contends that J's testimony established that the defendant placed his mouth on J's genitals, rendering the evidence sufficient to establish that the defendant was guilty of sexual assault in the first degree. We disagree.

During trial, J testified: "[W]e were playing a game [that] involved [the defendant's] picking me up above his head and swinging me around, and he would blow raspberries against my belly, which is sort of blowing air right against my skin. And . . . one of the times,

---

[8] Although § 53a-65 (8) was amended in 2006; Public Acts 2006, No. 06-11, § 1; those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current revision of § 53a-65 (8).

[9] In count four of the operative substitute long form information, the state "accuse[d] [the defendant] of the crime of sexual assault in the fourth degree and charge[d] that, between approximately the dates of June 11, 2005, and June 11, 2007, in Stafford . . . [the defendant] did intentionally subject another person who was under the age of fifteen years; to wit: [J] . . . to sexual contact by placing his mouth on her genitals, and that he specifically intended to obtain sexual gratification, and degrade and humiliate [J], in violation of . . . § 53a-73a (a) (1) (A)."

instead of blowing on my belly, he very deliberately blew in my crotch region, over my clothes. It was very close. I could feel his breath in my crotch." Subsequently, J confirmed that, by her "crotch," she meant her "genital area . . . ."

This testimony did not establish that any physical contact had occurred between the defendant's lips or tongue and J's genitals, as required by the definition of cunnilingus, or that the defendant "plac[ed] his mouth on [J's] genitals," as required by the manner in which the state charged sexual assault in the fourth degree. Rather, J testified that, instead "of blowing air right against [her] skin" on her belly, the defendant blew air in her genital area, over her clothes. Although J testified that she felt the defendant's breath "in [her] crotch," there was no testimony indicating that the defendant had touched J's genitals with his lips or tongue; see, e.g., *State* v. *Storlazzi*, 191 Conn. 453, 463, 464 A.2d 829 (1983); or that he had placed his mouth on her genitals or the clothing covering those areas.[10] Indeed, J testified that "[i]t was very close," indicating that the defendant's mouth was close to but not touching J's genitals. Consequently, the state's assertion that J testified that the defendant had placed his mouth on her genitals is unsupported by J's testimony. J did not testify that, and there was no other evidence presented to establish that, the defendant had made sexual contact with her genitals. Thus, even when construing the facts in the light most favorable to sustaining the verdict, we conclude, on the basis of the facts presented and the inferences reasonably drawn therefrom, that the evidence presented to the jury was insufficient to establish beyond a reasonable doubt that the defendant was guilty of sexual assault in the first degree through cunnilingus or sexual assault in the fourth degree.

---

[10] The defendant concedes that the presence of clothing would not prohibit a conviction based on sexual contact.

## II

## STATUTE OF LIMITATIONS

We next address the defendant's claim that his convictions of sexual assault in the first degree in violation of § 53a-70 (a) (2) and risk of injury to a child in violation of § 53-21 (a) (2) based on conduct with B should be reversed under the plain error doctrine because the trial court failed to obtain the defendant's knowing and voluntary waiver of the statute of limitations applicable to those charges. Specifically, the defendant claims that, because the statute of limitations applicable to the charges arising out of conduct with B had elapsed before the state filed the charges, the trial court's failure to obtain an explicit waiver for the state to proceed on the expired charges was a patent error that resulted in manifest injustice, necessitating reversal under the plain error doctrine. We agree and, accordingly, reverse the judgments with respect to the convictions arising out of the defendant's conduct involving B.

The following facts are relevant to this claim. B was born on April 14, 1995. The criminal charges for conduct involving B stem from a single incident in which the defendant is alleged to have digitally penetrated B sometime between April 14, 1998, and April 14, 2000, when she was between three and five years old.

B reached the age of majority on April 14, 2013. In 2019, approximately six years thereafter, the state charged the defendant with one count each of sexual assault in the first degree in violation of § 53a-70 (a) (2) and risk of injury to a child in violation of § 53-21 (a) (2), resulting from the digital penetration incident. The applicable statute of limitations for these offenses is found in General Statutes (Rev. to 2001) § 54-193a,[11] which provides

---

[11] In 2019, § 54-193a was repealed by No. 19-16, § 23, of the 2019 Public Acts, but its provisions remain in effect as to these charges.

All refences to § 54-193a are to the 2001 revision of the statute.

in relevant part that "no person may be prosecuted for any offense involving sexual abuse, sexual exploitation or sexual assault of a minor *except within two years from the date the victim attains the age of majority* . . . ." (Emphasis added.) Accordingly, the statute of limitations expired on April 14, 2015, two years after the date B reached the age of majority. See General Statutes (Rev. to 2001) § 54-193a. The defendant and the state agree that, because more than two years had passed between the time that B reached the age of majority and when the state filed these charges, the trial court would have been required to dismiss the charges if the defendant had raised the statute of limitations issue. The charges were not dismissed because neither the trial court nor the parties raised a statute of limitations issue as related to the charges arising out of conduct involving B.

However, at a pretrial hearing, the trial court, sua sponte, did raise a concern about the statute of limitations for some of the charges that were unrelated to B and advised the parties to be prepared to address the statute of limitations issue at a hearing in three weeks. At that hearing, the prosecutor and the trial court addressed the statute of limitations as it applied to the charges arising from conduct with J and M only. After a colloquy between the prosecutor and the trial court, the court found that the statute of limitations had not run on the charges arising from conduct with J but that the statute of limitations had run on some of the charges arising from conduct with M. Consequently, the trial court requested that the prosecutor file a substitute information eliminating those charges. Neither the parties nor the trial court addressed the fact that the statute of limitations had run with respect to the charged conduct involving B.

The following legal principles are applicable to the resolution of this issue. The defendant acknowledges

that this claim was not preserved but asserts that his conviction should be reversed under the doctrine of plain error. "The plain error doctrine . . . is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility." (Internal quotation marks omitted.) *State* v. *Diaz*, 302 Conn. 93, 101, 25 A.3d 594 (2011). This doctrine requires that we first consider whether "the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable." (Internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 596, 134 A.3d 560 (2016). Second, "we must determine whether the consequences of the error are so grievous as to be fundamentally unfair or manifestly unjust." *State* v. *Coward*, 292 Conn. 296, 307, 972 A.2d 691 (2009).

Because there is nothing in the record indicating that the defendant was aware that the statute of limitations had lapsed with respect to the charges relating to conduct involving B, the first prong of the plain error doctrine requires us to determine whether our law is clear that the statute of limitations may be waived only through a knowing and voluntary waiver. The defendant argues that this court's prior decisions in *State* v. *Littlejohn*, 199 Conn. 631, 641, 508 A.2d 1376 (1986), and *State* v. *Golodner*, 305 Conn. 330, 359, 46 A.3d 71 (2012), require that a waiver of a criminal defendant's rights under the statute of limitations be express, knowing, and voluntary. Thus, he maintains, it was plain error for the trial court to fail to canvass the defendant and to obtain his knowing and voluntary waiver of his rights under the statute of limitations.

The state acknowledges this precedent but argues that we should overrule the rule set forth in this court's decisions in *Littlejohn* and *Golodner*. The state contends that we should adopt the rule favored by the Appellate Court; see, e.g., *State* v. *Pugh*, 176 Conn. App. 518, 534–35, 170 A.3d 710, cert. denied, 327 Conn. 985, 175 A.3d 43 (2017); *State* v. *Coughlin*, 61 Conn. App. 90, 97, 762 A.2d 1 (2000), cert. denied, 255 Conn. 934, 767 A.2d 105 (2001); *State* v. *Harrison*, 34 Conn. App. 473, 491–92, 642 A.2d 36, cert. denied, 231 Conn. 907, 648 A.2d 157 (1994); which considers the statute of limitations to be an affirmative defense, and, like all other affirmative defenses, it is implicitly waived if not timely raised before the trial court. We agree with the defendant and reiterate our pronouncement in *Littlejohn* and *Golodner* that, although a criminal defendant's rights under the statute of limitations can be waived, the waiver must be knowing and voluntary.

This court first addressed the waiver of rights under a statute of limitations in *Littlejohn*. In *Littlejohn*, the defendant was initially charged with murder, on which the statute of limitations had not run, and was subsequently charged, in a substitute information, with the lesser included offense of manslaughter in the second degree with a firearm, on which the statute of limitations had run. See *State* v. *Littlejohn*, supra, 199 Conn. 633–34. As a result of negotiations between defense counsel and the prosecutor, the defendant offered to execute a written waiver of the statute of limitations that was applicable to the expired second degree manslaughter charge to allow him to plead guilty to that lesser included offense, notwithstanding the fact that the statute of limitations had expired. See id., 634. The trial court declined to accept the waiver. Id. The defendant was subsequently found guilty of murder. Id., 633.

On appeal to this court, the defendant claimed that the trial court had erred in declining to accept his

waiver. Id., 636. This court agreed and concluded that, "although the protection is given to a criminal defendant by a statute, it is in the nature of a 'substantive right,' extending, [when] timely asserted, immunity from prosecution." Id., 640. This court further clarified that "[a]ny waiver of the statute [of limitations] must, of course, be voluntary and intelligent and a waiver presents a question of fact in each case." Id., 641.[12]

This court, in *Golodner*, again addressed whether and how criminal defendants may waive their rights under the applicable statute of limitations. See *State* v. *Golodner*, supra, 305 Conn. 356, 359. In that case, the defendant was charged with both reckless endangerment in the first degree and the lesser included offense of reckless endangerment in the second degree. Id., 333. At the time the defendant was charged with the

---

[12] Although the state contends that the statement in *Littlejohn* that the statute of limitations may be waived only knowingly and voluntarily is noncontrolling dictum because the question in *Littlejohn* was whether the defendant could waive his rights pursuant to the statute of limitations, not the manner in which a waiver may occur, we do not find this argument persuasive. See *State* v. *Littlejohn*, supra, 199 Conn. 636. "Dictum includes those discussions that are merely passing commentary . . . those that go beyond the facts at issue . . . and those that are unnecessary to the holding in the case. . . . [I]t is not dictum [however] when a court . . . intentionally takes up, discusses, and decides a question germane to, though not necessarily decisive of, the controversy . . . . Rather, such action constitutes an act of the court [that] it will thereafter recognize as a binding decision." (Internal quotation marks omitted.) *Cruz* v. *Montanez*, 294 Conn. 357, 376–77, 984 A.2d 705 (2009). The statement in *Littlejohn* concerning the requirement of a knowing and voluntary waiver was not mere passing commentary and did not go beyond the facts at issue. Rather, the case involved a defendant who wished to knowingly and voluntarily waive the statute of limitations so that he could plead guilty to a lesser included offense on which the statute of limitations had already expired. See *State* v. *Littlejohn*, supra, 633–35. Upon appeal, this court remanded the case to the trial court "with direction to permit the defendant to plead guilty . . . *upon finding that the plea is knowingly and voluntarily made* . . . ." (Citations omitted; emphasis added.) Id., 643. Thus, this court's statements in *Littlejohn* directly addressed the facts at issue and were central to this court's binding disposition and remain controlling.

lesser included offense, the statute of limitations had already expired. Id., 355–56. Neither the trial court nor defense counsel raised the statute of limitations before or during the trial; see id.; and the defendant was found guilty of the lesser included offense of reckless engagement in the second degree, but he was found not guilty of the greater offense of reckless endangerment in the first degree. Id., 333. After the defendant was found guilty, he filed a motion for acquittal and a motion for a new trial based on the expiration of the statute of limitations, which the trial court denied. Id., 355–56.

On appeal to this court, the defendant claimed that the trial court improperly denied his motions because the statute of limitations applicable to the lesser included offense had expired, and he had not knowingly and voluntarily waived his rights under the statute of limitations. See id. This court agreed and reversed the judgment as to the expired charge, concluding that, because there was "nothing to suggest a voluntary waiver on the part of the defendant," his conviction for reckless endangerment in the second degree could not stand. Id., 359–60. Thus, in *Golodner*, this court unequivocally held that criminal defendants may waive their rights under the statute of limitations only knowingly and voluntarily. See id., 359.

Although the state contends that we should overrule our conclusion in *Littlejohn* and *Golodner* that the statute of limitations may be waived only knowingly and voluntarily, and instead hold that the statute of limitations is waived if not explicitly raised before or during the trial, we do not find this argument persuasive. The state correctly observes that, in *Littlejohn*, this court stated that the statute of limitations is "an affirmative defense, *which must be asserted at or before trial*"; (emphasis added) *State* v. *Littlejohn*, supra, 199 Conn. 639; and that the statute of limitations extends immunity from prosecution when "*timely asserted* . . . ."

(Emphasis added.) Id., 640. Although we recognize that this court has concluded that a statute of limitations is more analogous to an affirmative defense than a jurisdictional requirement; see, e.g., id.; a review of the purpose and use of a statute of limitations demonstrates that it is more in the nature of a procedural protection. Unlike other affirmative defenses, in many cases, the expiration of the statute of limitations is dispositive on the face of the complaint, and the defendant is not required to establish any facts beyond the date of the offense and the date the charges were initiated.

Furthermore, since *Littlejohn*, we have backed away from treating a statute of limitations as an affirmative defense like all other such defenses that must be raised or waived. In *Golodner*, which this court decided after *Littlejohn*, the statute of limitations claim was raised *after* trial, and the state argued that it was untimely because it was not asserted before trial. See *State* v. *Golodner*, supra, 305 Conn. 356. We nonetheless made clear that the statute of limitations may be waived only through a knowing and voluntary waiver. See id., 359. To the extent that the Appellate Court has concluded otherwise, those cases are overruled. See, e.g., *State* v. *Pugh*, supra, 176 Conn. App. 534–35; *State* v. *Coughlin*, supra, 61 Conn. App. 97; *State* v. *Harrison*, supra, 34 Conn. App. 491–92.

We reach this conclusion because the nature of the statute of limitations, particularly in the criminal context, differs substantially from that of other affirmative defenses and is an important procedural protection providing immunity from prosecution. Section 54-193a, the applicable statute of limitations, plainly provides in relevant part that "*no person may be prosecuted* for any offense involving sexual abuse . . . or sexual assault of a minor except within two years from the date the victim attains the age of majority . . . ." (Emphasis added.) Consistent with this strong prohibitory statu-

tory language, it is well established that the underlying purpose of the statute of limitations is to safeguard criminal defendants from the deprivation of their liberty through the use of stale evidence to secure a conviction. See, e.g., *United States* v. *Marion*, 404 U.S. 307, 322, 92 S. Ct. 455, 30 L. Ed. 2d 468 (1971) (statute of limitations "provide[s] . . . [mechanism] to guard against . . . prejudice resulting from the passage of time between crime and arrest or charge"); *Toussie* v. *United States*, 397 U.S. 112, 114, 90 S. Ct. 858, 25 L. Ed. 2d 156 (1970) ("[t]he purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions"); *United States* v. *Ewell*, 383 U.S. 116, 122, 86 S. Ct. 773, 15 L. Ed. 2d 627 (1966) (statute of limitations provides "primary guarantee against bringing overly stale criminal charges"). The statute of limitations also has the important and "salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity." *Toussie* v. *United States*, supra, 115.

In addition, as we explained in *Littlejohn*, the purposes served by the statute of limitations in the criminal context are more comprehensive than those in the civil context "because not only are the interests of the defendant involved, but also those of society and the criminal justice system, to which legislative and judicial concerns are geared. . . . Criminal statutes of limitation fairly represent legislative assessments of relative interests of the [s]tate and the defendant in administering and receiving justice . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Littlejohn*, supra, 199 Conn. 641; see also, e.g., *State* v. *Golino*, 201 Conn. 435, 445–46, 518 A.2d 57 (1986) ("[o]ur legislature has weighed and measured these competing interests through the enactment of [the applicable statute of limitations]").

For all of the foregoing reasons, we reiterate that the protection against prosecution afforded by the statute of limitations is significant enough for us to require that "[a]ny waiver of the statute . . . be voluntary and intelligent . . . ." *State* v. *Littlejohn*, supra, 199 Conn. 641; see also, e.g., *State* v. *Pearson*, 858 S.W.2d 879, 887 (Tenn. 1993) ("[a]lthough the protection against prosecution provided by a statute of limitations may not rise to the level of a fundamental right, we conclude [that] the right is sufficiently substantial to apply the same standard applied in determining whether there has been an effective waiver as to fundamental rights").

Accordingly, like other crucial protections afforded to criminal defendants, a defendant's rights pursuant to the statute of limitations may be waived, but that waiver must be knowing and voluntary. See, e.g., *State* v. *Hafford*, 252 Conn. 274, 295, 746 A.2d 150 ("[a] waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege" (internal quotation marks omitted)), cert. denied, 531 U.S. 855, 121 S. Ct. 136, 148 L. Ed. 2d 89 (2000); *State* v. *Robinson*, 237 Conn. 238, 245, 676 A.2d 384 (1996) (defendant can be deemed to have waived right "by failing to assert that right only if he or she has had access to sufficient information to support . . . claim"). To hold otherwise would frustrate the underlying function and purpose of the statute of limitations—to protect criminal defendants from being tried when the facts have been distorted by the passage of time. It would also undermine the salutary purpose of requiring the state to prosecute crimes within the time limits established by the legislature. Given the serious deprivation of liberty involved, it makes sense to us that, if a criminal defendant wants to subject himself to a conviction and incarceration based on charges that the state is statutorily barred from pursuing, he should knowingly and voluntarily say so. Waiver of the statute of limitations will not be

presumed when there is no evidence in the record to indicate that the defendant intentionally waived the statute of limitations.[13] Although, ideally, the statute of limitations defense should be raised at trial, unless there is evidence that the defendant knowingly and voluntarily waived it, the failure to raise it at trial does not preclude an appellate court from considering whether reversal under the plain error doctrine is necessary. At best, the failure to raise the statute of limitations at trial is potentially an implied or implicit waiver, and that type of waiver does not preclude reversal for plain error. Cf. *State* v. *McClain*, 324 Conn. 802, 804–805, 808, 155 A.3d 209 (2017) (implied waiver of instructional error pursuant to *State* v. *Kitchens*, 299 Conn. 447, 482–83, 10 A.3d 942 (2011), does not preclude appellate court from holding that there was plain error in trial court's jury instruction). In such cases, the defendant has the burden of proving both that it was an obvious error for the trial court to allow the state to proceed on the charges and that the error resulted in manifest injustice.

In the present case, the defendant established, and the state concedes, that the statute of limitations had run on the sexual assault in the first degree and risk of injury to a child charges relating to the defendant's conduct involving B and that the charges would have been dismissed had the defendant timely raised the statute of limitations claim before the trial court. Consequently, we conclude that the trial court's failure to obtain the defendant's knowing and voluntary waiver of his rights under the statute of limitations is a patent error.

---

[13] We decline to decide today what is necessary to establish a knowing and voluntary waiver of the statute of limitations. Rather, in the present case, there is no indication that the defendant was ever aware of the statute of limitations as applied to these charges, let alone that he knowingly and voluntarily waived his rights under the statute of limitations.

We further conclude that the error resulted in a manifest injustice to the defendant. Had the trial court or parties been aware of the expiration of the statute of limitations for the charges arising out of conduct involving B, the state would have withdrawn those charges. Indeed, the state admits that, had the defendant raised the statute of limitations, the charges would have been dismissed. The defendant would therefore not have been tried and found guilty of either sexual assault in the first degree, for which he was sentenced to twenty years of imprisonment, execution suspended after ten years, and twenty years of probation, or risk of injury to a child, for which he was sentenced to ten years of imprisonment, for his conduct involving B. Put another way, the defendant would not have been deprived of his liberty based on those charges. Therefore, we reverse the defendant's convictions of sexual assault in the first degree and risk of injury to a child arising from conduct involving B and remand the case to the trial court with instructions to render a judgment of acquittal on those charges and for resentencing.[14]

## III

## SEXUAL MISCONDUCT EVIDENCE

We next address the defendant's claim regarding sexual misconduct evidence. We understand the defen-

---

[14] In 2021, the state filed a three count, substitute long form information, adding a count of risk of injury to a child in violation of § 53-21 (a) (1). Like with the other two charges, the statute of limitations had run on the risk of injury charge under § 53-21 (a) (1), and that charge would have been dismissed had the defendant timely raised the statute of limitations claim before the trial court.

In addition, to the extent that the defendant argues that, because we conclude that the statute of limitations barred the charges arising from the defendant's conduct involving B, that evidence was improperly deemed cross admissible and, therefore, was improperly admitted, we disagree. The trial court properly deemed the evidence admissible as propensity evidence pursuant to our prior decision in *State* v. *DeJesus*, 288 Conn. 418, 476–77, 953 A.2d 45 (2008). Thus, we treat the evidence arising from the defendant's conduct involving B as uncharged misconduct evidence.

dant's primary claim to be that the trial court did not provide the jury with the proper limiting instruction regarding the sexual misconduct evidence. Specifically, the defendant asserts that the trial court should have instructed the jury about the limited use of sexual misconduct evidence and that the trial court's instruction was not sufficient in this regard. The defendant acknowledges that, despite having been given the jury instruction in advance, defense counsel raised no objection on this ground, and that this portion of the claim may be subject to implicit waiver under this court's decision in *State* v. *Kitchens*, supra, 299 Conn. 482–83. Nevertheless, he contends that reversal is warranted under the plain error doctrine. The defendant also argues that the trial court abused its discretion in admitting the misconduct evidence because the prejudicial effect of that evidence outweighed any probative value. We disagree.

The following facts are relevant to our analysis of this claim. Prior to trial, the state filed a motion to join the defendant's informations in each of the separate cases on the ground that the evidence was cross admissible in each case. Initially, the defendant objected to the joinder of the cases, arguing that the propensity evidence should not be admissible and was more prejudicial than probative. The trial court and the parties met in chambers, and, following that meeting, the defense agreed to the joinder of the cases. At a subsequent hearing, the trial court, in explaining the basis for the joinder, stated that the evidence was cross admissible under the standard previously applied by this court. See *State* v. *Devon D.*, 321 Conn. 656, 665–66, 674–75, 138 A.3d 849 (2016) (relying on *State* v. *DeJesus*, 288 Conn. 418, 476–77, 953 A.2d 45 (2008), to determine that sexual misconduct evidence was cross admissible).

The state also sought to introduce evidence of uncharged incidents of misconduct related to conduct involving J

and D. Specifically, the state sought to introduce evidence of an incident that occurred in Texas, during which the defendant allegedly sexually assaulted D when D was approximately twelve or thirteen years old. In addition, the state sought to introduce evidence that, when J was approximately five years old, the defendant took his penis out of his boxers and asked J if she wanted to touch it.

The defendant objected, arguing that the uncharged misconduct evidence should not be admitted because it was more prejudicial than probative, as some of the conduct did not take place in Connecticut, and the timeline of the incidents was unclear and lacked specificity. After a hearing addressing this issue, the trial court concluded that the evidence met the standard for the admission of propensity evidence under the Code of Evidence; see Conn. Code Evid. § 4-5 (b); and this court's prior decisions in *State* v. *DeJesus*, supra, 288 Conn. 476–77, and *State* v. *Acosta*, 326 Conn. 405, 411–13, 164 A.3d 672 (2017). Consequently, at trial, the trial court permitted the jury to consider the charged misconduct in each case as to the other cases, as well as the uncharged misconduct.

During the trial, D and J testified concerning two incidents of uncharged misconduct. D testified as to the alleged incident that occurred in Texas. Specifically, D testified that, during a family vacation in Texas, the family had two rooms—one for the defendant and D, and another for D's sisters and mother—and D and the defendant shared a bed. D further testified that the defendant had noticed that D was having difficulty sleeping and had told D that "this usually helps me," before removing D's shorts and manually stimulating D's penis. D testified that he was "embarrassed and uncomfortable" and had told the defendant to stop.

Additionally, J testified about an uncharged incident during which the defendant was tucking her into bed

when she was approximately five years old. J testified that, rather than turning out the light and leaving, the defendant had gotten into bed with her. J continued that she was lying on top of him and shifting around. J then stated that she could feel a "lump" in the defendant's crotch and that the defendant then removed his penis from his underwear and asked if she wanted to feel it, before allowing his penis to lie between the defendant and J for several minutes.

Each of the complainants, B, J, and D, also testified as to the incidents of misconduct for which the defendant was charged. Specifically, B testified that, when she was approximately three or four years old, one evening she was sleeping on the couch on the first floor of their home, and, at one point during that night, she awoke and could feel the defendant digitally penetrating her vagina while she pretended to sleep. D testified about one incident for which the defendant was charged. Specifically, D testified that, on one occasion, while showering alone with the defendant, the defendant masturbated in front of him.

J testified about two incidents for which the defendant was charged. With respect to the first incident, J testified that the defendant had blown air toward her clothed genital area. See part I of this opinion. The second incident occurred when J was approximately nine years old and was being homeschooled by the defendant. She testified that, during a sex education lesson when she and the defendant were alone in their home, the defendant directed her to sit on the couch, remove her pants and underwear, and use a mirror to look at her genitals. J stated that the defendant then sat next to her and told her about and pointed to the anatomical features of her genitals. J continued that the defendant then removed his pants and underpants and stated that, because they had looked at female anatomy, they should also look at his anatomy. J further

stated that the defendant then asked her to touch his penis, which she did, and directed her on how to hold and touch it, until he eventually ejaculated into a towel.

At the close of trial, the court proposed the following instruction to the parties concerning the evidence of misconduct: "In this case, when the defendant is charged with criminal sexual behavior, evidence of the defendant's commission of another offense or offenses is admissible and may be considered if it is relevant to prove that the defendant had the propensity or a tendency to engage in the type of criminal sexual behavior with which he is charged. Bear in mind, as you consider this evidence, that, at all times, the state has the burden of proving beyond a reasonable doubt that the defendant committed each of the elements of the offense or offenses charged in the information. I remind you that the defendant is not on trial for any act, conduct or offense not charged in the informations. With regard to the propensity evidence, like other evidence, you decide to give it a weight you find reasonable. . . . As you know as well, testimony from each of the complainants may be considered as misconduct testimony in the other two informations. So, for these three cases, you may use [B's] and [J's] testimony in [D's] case. In [B's] case, you may use [D's] and [J's] testimony for this specific purpose. In [J's] case, [D's] and [B's] testimony." Neither party objected to this instruction, and the trial court therefore instructed the jury in accordance with the proposed instruction.

"It is well established that we review the trial court's decision to admit evidence . . . for an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Acosta*, supra, 326 Conn. 411. "Generally, '[e]vidence of other crimes, wrongs or acts of a person is inadmissible to prove the bad character, propensity, or criminal tendencies of that person . . . .' Conn. Code Evid. § 4-5 (a). Exceptions exist, however, and '[e]vidence of other

sexual misconduct is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct' if certain conditions are satisfied. Conn. Code Evid. § 4-5 (b)." *State* v. *Acosta*, supra, 411–12.

Consequently, this court has long recognized, and our Code of Evidence has codified, that such evidence "is admissible in a criminal case to establish that the defendant had a tendency or a propensity to engage in aberrant and compulsive sexual misconduct if: (1) the case involves aberrant and compulsive sexual misconduct; (2) the trial court finds that the evidence is relevant to a charged offense in that the other sexual misconduct is not too remote in time, was allegedly committed upon a person similar to the alleged victim, and was otherwise similar in nature and circumstances to the aberrant and compulsive sexual misconduct at issue in the case; and (3) the trial court finds that the probative value of the evidence outweighs its prejudicial effect." Conn. Code Evid. § 4-5 (b); see also, e.g., *State* v. *DeJesus*, supra, 288 Conn. 476; *State* v. *Esposito*, 192 Conn. 166, 169–70, 471 A.2d 949 (1984).

As this court acknowledged in *DeJesus*, "strong public policy reasons . . . exist to admit evidence of uncharged misconduct more liberally in sexual assault cases than in other criminal cases." *State* v. *DeJesus*, supra, 288 Conn. 468. "First, in sex crime cases generally, and in child molestation cases in particular, the offense often is committed surreptitiously, in the absence of any neutral witnesses. Consequently, courts allow prosecutorial authorities greater latitude in using prior misconduct evidence to bolster the credibility of the complaining witness and to aid in the obvious difficulty of proof. . . . Second, because of the unusually aberrant and pathological nature of the crime of child molestation, prior acts of similar misconduct, as opposed to other types of misconduct, are deemed to be highly

probative because they tend to establish a necessary motive or explanation for an otherwise inexplicably horrible crime . . . and assist the jury in assessing the probability that a defendant has been falsely accused of such shocking behavior. . . . Relatedly, when human conduct involves sexual misconduct, people tend to act in generally consistent patterns of behavior, and . . . it is unlikely (although, of course, not impossible) that the same person will be falsely accused by a number of different victims." (Citations omitted; internal quotation marks omitted.) *State* v. *Acosta*, supra, 326 Conn. 412.

We begin with the defendant's argument that his convictions should be reversed under the plain error doctrine because the instruction provided to the jury was insufficient to inform the jury as to the acceptable use and weight to afford the uncharged misconduct evidence. The defendant maintains that this court's prior decision in *DeJesus* suggests that, when a trial court allows the admission of misconduct evidence, there is a need for a comprehensive jury instruction, prohibiting the jury from considering the misconduct as evidence of bad character, a tendency to commit criminal acts in general, or that the defendant committed the acts charged in the case for which he is being prosecuted. Because the trial court in the present case instructed the jury that it could give the evidence any weight the jury found reasonable and consider the evidence regarding each complainant in considering the charges concerning the other complainants, the defendant maintains that the instruction was inadequate.

We first note that the defendant waived this claim. It is well established that, "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to

have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." *State* v. *Kitchens*, supra, 299 Conn. 482–83. In the present case, defense counsel was provided with the jury instruction in advance and, upon being asked if she had had any objections, replied that she did not. Consequently, the defendant has waived this claim.

However, the defendant requests that we reverse his convictions under the plain error doctrine. See, e.g., *State* v. *McClain*, supra, 324 Conn. 804–805, 808 (implied waiver of claim of instructional error does not preclude appellate relief under plain error doctrine). As we previously noted in this opinion, "we employ a two-pronged test to determine whether plain error has occurred: the defendant must establish that (1) there was an obvious and readily discernable error, and (2) that error was so harmful or prejudicial that it resulted in manifest injustice." (Internal quotation marks omitted.) *State* v. *Kyle A.*, 348 Conn. 437, 446, 307 A.3d 249 (2024).

In *DeJesus*, this court noted that, when evidence of uncharged sexual misconduct is introduced, the trial court must provide an appropriate limiting instruction. *State* v. *DeJesus*, supra, 288 Conn. 474. This court advised that an appropriate limiting instruction may advise the jury that such evidence is admissible and may be considered for any matter to which it is relevant but that it, alone, is insufficient to establish the defendant's guilt, and that the state has the burden of establishing each of the elements of the offenses charged in the information beyond a reasonable doubt.[15] Id., 474

---

[15] In *DeJesus*, the trial court provided the following jury instruction, in full, as a model: "In a criminal case in which the defendant is [charged with a crime exhibiting aberrant and compulsive criminal sexual behavior], evidence of the defendant's commission of another offense or offenses . . . is admissible and may be considered for its bearing on any matter to which it is relevant. However, evidence of a prior offense on its own is not sufficient to prove the defendant guilty of the crimes charged in the [information]. Bear in mind as you consider this evidence [that] at all times, the government

n.36. Moreover, the trial court should instruct the jury that the defendant is not on trial for any conduct for which he is not charged. Id.

In the present case, when instructing the jury, the trial court substantially adhered to this court's prior guidance. Indeed, the trial court instructed the jury that it may consider the evidence "if it is relevant to prove that the defendant had the propensity or a tendency to engage in the type of criminal sexual behavior with which he is charged." The court further informed the jury that "the state has the burden of proving beyond a reasonable doubt that the defendant committed each of the elements of the offense or offenses charged in the information." Finally, the court warned the jury that "the defendant is not on trial for any act, conduct or offense not charged in the informations."[16] Although the instruction was, perhaps, not as clear as it could have been, the trial court instructed the jury substantially in accordance with what this court has previously advised. See, e.g., *Hickey* v. *Commissioner of Correction*, 329 Conn. 605, 621, 188 A.3d 715 (2018) (concluding that instruction that "mirrored, almost exactly, the language set forth in *State* v. *DeJesus*, supra, 288 Conn. 474 n.36 . . . provided sufficient legal guidance for the jury"). Therefore, we cannot conclude that the trial court committed a patent error in instructing the jury.

To the extent that the defendant asserts that the trial court abused its discretion in admitting this sexual mis-

---

has the burden of proving that the defendant committed each of the elements of the offense charged in the [information]. I remind you that the defendant is not on trial for any act, conduct, or offense not charged in the [information]." (Internal quotation marks omitted.) *State* v. *DeJesus*, supra, 288 Conn. 474 n.36.

[16] Although the defendant challenges the trial court's statement that the jury may, as it may with all other evidence, "give [the propensity evidence the] weight [the jury] find[s] reasonable," it is the function of the jury to weigh and interpret the evidence. See *State* v. *Lori T.*, 345 Conn. 44, 72, 282 A.3d 1233 (2022).

conduct evidence as propensity evidence because the prejudicial effect of the sexual misconduct evidence outweighed its probative value, we also reject that claim. The defendant acknowledges that "[a]lmost all of this evidence consisted of the allegations in the other cases, as all of the charges were tried together." Despite making this passing reference, the defendant does not claim that the trial court erred in joining the cases. Once the court concluded that the sexual misconduct evidence was cross admissible, and the defense agreed to the joinder, the sexual misconduct evidence relating to the allegations in the other cases was properly admitted and could be considered by the jury. To the extent that the defendant claims that the trial court improperly admitted evidence of uncharged misconduct, we disagree and conclude that the trial court did not abuse its discretion in concluding that the prejudicial effect of that evidence did not outweigh its probative value.

Evidence is unfairly prejudicial when it "arouse[s] the [jurors'] emotions of prejudice, hostility or sympathy . . . or tends to have some adverse effect [on the party against whom the evidence is offered] beyond tending to prove the fact or issue that justified its admission into evidence." (Internal quotation marks omitted.) *Vasquez* v. *Rocco*, 267 Conn. 59, 64–65, 836 A.2d 1158 (2003). As we have long recognized, evidence of prior sexual misconduct is "highly probative . . . ." (Internal quotation marks omitted.) *State* v. *DeJesus*, supra, 288 Conn. 469. This is especially true in cases in which the alleged misconduct is temporally proximate to the charged conduct, and the misconduct was allegedly committed against a similar person and in similar circumstances to that in the charged case. See, e.g., *State* v. *Acosta*, supra, 326 Conn. 412–13.

In the present case, the misconduct evidence was highly probative of the defendant's propensity to engage in aberrant and compulsive sexual misconduct. The

misconduct occurred in the same general time frame. See, e.g., id., 419. Moreover, the complainants had a great deal in common, as they were siblings, and the conduct occurred in similar circumstances.

The misconduct evidence also had a minimal prejudicial effect when considered in context with the other evidence presented. Evidence is less likely to "unduly arouse the [jurors'] emotions, hostility or sympathy . . . when similar evidence . . . already has been presented to the jury." (Citation omitted; internal quotation marks omitted.) *State* v. *James G.*, 268 Conn. 382, 400, 844 A.2d 810 (2004). Because the testimony provided by the complainants in the present case was similar, describing acts of sexual violence against children, the repetition of its introduction was unlikely to unduly arouse the emotions of the jurors. Further, any prejudice was mitigated by the trial court's repeated exhortations, advising the jury that the state had the burden of establishing all elements of each crime beyond a reasonable doubt and that the defendant was not on trial for any uncharged conduct. Thus, we conclude that the trial court did not abuse its discretion in admitting the uncharged misconduct evidence.

## IV

## CONFRONTATION CLAUSE

The defendant next claims the trial court abused its discretion in declining to conduct an in camera review of the psychiatric records of J and B and in declining to release the psychiatric records of D. Specifically, the defendant maintains that, in so doing, the trial court violated his rights under the confrontation clause of the sixth amendment to the United States constitution.[17] We disagree.

---

[17] The defendant also asserts that the trial court violated his due process rights. To the extent that the defendant claims that the trial court violated his rights under the due process clause of the fourteenth amendment to the United States constitution by declining to conduct an in camera review of M's, B's and J's psychiatric records for exculpatory evidence, the defendant's

The following additional facts and procedural background are relevant to our resolution of this issue. Prior to trial, the defendant subpoenaed the confidential records of the complainants and filed several motions[18] requesting that the trial court conduct an in camera review of the records and release them for the purposes of impeachment.

In support of his motion requesting an in camera review of J's confidential records, the defendant asserted that J's statements and demeanor during her forensic interview indicated that she was not credible. Specifically, at one point, J indicated that she operated in "two realities." After reviewing the forensic interview, the trial court disagreed with the defendant and observed that J was alert and oriented during the interview. Additionally, the trial court noted that, although J stated in her forensic interview that she was living with "two realities" and that she had been engaged in therapy, in context, these were "simple comments" and insufficient to warrant an in camera review. Accordingly, the trial court denied the defendant's request for an in camera review of J's records, concluding that the defendant had failed to meet his burden of demonstrating that such a review was warranted.

In support of his request that the trial court conduct an in camera review of B's confidential records, the

argument is conclusory and contains no applicable legal authority discussing how we would analyze such a claim or how our analysis under the due process clause would differ from that under the confrontation clause. Therefore, we conclude that the claim is inadequately briefed and decline to address it. See, e.g., *Burton* v. *Dept. of Environmental Protection*, 337 Conn. 781, 801–802, 256 A.3d 655 (2021) (claim was inadequately briefed when plaintiff provided no legal authority in support of analysis).

[18] The defendant filed two motions for in camera review pertaining to the mental health and school records of D and J. The defendant also filed a motion for an in camera review of the mental health records of M. In addition, the defendant filed a "motion in limine" regarding the disclosure of B's medical records. The trial court treated this motion as a motion for an in camera review.

defendant pointed to statements that B made during her forensic interview about being " 'super paranoid' " and that she believed that there were hidden cameras in her house. After reviewing the forensic interview of B, the court denied the defendant's request for an in camera review of B's records, concluding that the defendant had failed to meet his burden. Consequently, the court declined to conduct an in camera review of B's and J's psychiatric records and ordered that the records remain sealed.

The defendant also requested that the trial court conduct an in camera review of D's confidential records, asserting that D made statements in his forensic interview that called his credibility into question. Specifically, D stated that he had "compulsive lying habits about . . . sexual things that [he does] that [he is] not proud of . . . ." The trial court determined that the defendant had made a preliminary showing necessary to warrant review of D's psychiatric records. Therefore, after obtaining D's consent, the trial court conducted an in camera review of D's records but determined that the records did not contain any information that would challenge D's credibility. As a result, the trial court ordered that the records remain sealed and did not release any of them to the defendant.

The complainants' records at issue are confidential communications pursuant to General Statutes § 52-146e. The procedure for balancing a witness' interest in keeping statutorily privileged records confidential against the defendant's rights under the confrontation clause is well-documented. See, e.g., *State* v. *Juan A. G.-P.*, 346 Conn. 132, 153–54, 287 A.3d 1060 (2023); *State* v. *McMurray*, 217 Conn. 243, 257–58, 585 A.2d 677 (1991); *State* v. *Esposito*, supra, 192 Conn. 179–80. "If, for the purposes of cross-examination, a defendant believes that certain privileged records would disclose information especially probative of a witness' ability to

comprehend, know or correctly relate the truth, he may, out of the jury's presence, attempt to make a preliminary showing that there is a reasonable ground to believe that the failure to produce the records would likely impair his right to impeach the witness. . . . If in the trial court's judgment the defendant successfully makes this showing, the state must then obtain the witness' permission for the court to inspect the records in camera. A witness' refusal to consent to such an in camera inspection entitles the defendant to have the witness' testimony stricken. . . .

"Upon inspecting the records in camera, the trial court must determine whether the records are especially probative of the witness' capacity to relate the truth or to observe, recollect and narrate relevant occurrences. . . . If the court determines that the records are probative, the state must obtain the witness' further waiver of his privilege concerning the relevant portions of the records for release to the defendant, or have the witness' testimony stricken. If the court discovers no probative and impeaching material, the entire record of the proceeding must be sealed and preserved for possible appellate review." (Internal quotation marks omitted.) *State* v. *Juan A. G.-P.*, supra, 346 Conn. 153–54.

It is well established that "[a]ccess to confidential records should be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it . . . and to weigh that value against the interest in confidentiality of the records." (Internal quotation marks omitted.) *State* v. *Slimskey*, 257 Conn. 842, 856, 779 A.2d 723 (2001). On appeal, this court will set aside a trial court's decision not to conduct an in camera review of a witness' psychiatric records or not to release a witness' psychiatric records only if there is a clear

abuse of discretion. See, e.g., *State* v. *Juan A. G.-P.*, supra, 346 Conn. 154.

On appeal, the defendant claims that the trial court improperly failed to conduct an in camera review of J's confidential records. Specifically, the defendant asserts that he made a preliminary showing under *Esposito* that an in camera review was required. See *State* v. *Esposito*, supra, 192 Conn. 179–80. We disagree.

We have reviewed the record and agree with the trial court that the defendant did not make the necessary preliminary showing that the failure to produce the records was likely to impair his confrontation rights. See, e.g., *State* v. *Bruno*, 197 Conn. 326, 330, 497 A.2d 758 (1985), cert. denied, 475 U.S. 1119, 106 S. Ct. 1635, 90 L. Ed. 2d 181 (1986). No showing was made that J had a problem that affected her testimonial capacity at the time of trial or at any other pertinent time. See *State* v. *Esposito*, supra, 192 Conn. 180. The only facts revealed during the defendant's offer of proof on this issue were that J had made some isolated comments that she lived with "two realities" and that she had received psychiatric treatment. Understood in context, these comments, by themselves, do not indicate that J had any psychiatric problem affecting her ability to recall events accurately. Additionally, this court has held that receiving psychiatric treatment, alone, is not sufficient to establish that a witness' ability to recall events or the witness' veracity is impaired. See, e.g., *State* v. *Burak*, 201 Conn. 517, 525, 518 A.2d 639 (1986) (declining to "hold that the records of anyone who has ever received psychiatric treatment, for whatever purpose, are fair game for disclosure").

Moreover, defense counsel had ample opportunity to cross-examine J as to J's statements during the forensic interviews and about her mental health. See, e.g., *State* v. *Bruno*, supra, 236 Conn. 523–33 (determining that

*Esposito* threshold showing can be made by eliciting testimony on cross-examination). During her testimony, J was able to clearly articulate the dichotomy between the reality of the family being a "whole and functional unit" and the one in which she experienced abuse when she "was alone or behind closed doors." This statement describes her unfortunate circumstances rather than suggesting that she had an inability to comprehend, know or correctly relate the truth. See *State* v. *Esposito*, supra, 192 Conn. 180 (reviewing witness' testimony on direct and cross-examination and determining that there was nothing indicating witness "had any problem recalling or narrating the events relating to the sexual assault"). Accordingly, the trial court did not abuse its discretion in declining to conduct an in camera review of J's psychiatric records.

The defendant next asserts that the trial court improperly denied his request for an in camera review of B's psychiatric records because the defendant had made the necessary preliminary showing. Specifically, on appeal, the defendant asserts that B made statements during her forensic interviews concerning " 'repressed memor[ies]' " and that those were sufficient under *Esposito* to require an in camera review. See *State* v. *Esposito*, supra, 192 Conn. 179–80. In addition, the defendant argued before the trial court that B's psychiatric records were reviewable because her statements during the forensic interview pertaining to being " 'super paranoid' " and having concerns over the existence of hidden cameras in the house established the necessary foundation. We conclude that the trial court did not abuse its discretion in determining that B's statements during her forensic interview failed to provide reasonable grounds to believe that B's records would yield evidence concerning her testimonial capacity at any pertinent time. See *State* v. *Esposito*, supra, 180.

In the present case, the defendant failed to demonstrate a connection between B's statements during her forensic interview and her capacity to testify truthfully surrounding the events of the alleged abuse. It is clear, under *Esposito* and its progeny, that a party who seeks an in camera review must make a preliminary showing that a witness has a mental condition that would impair the witness' ability to recall events or the witness' testimonial capacity. See, e.g., id.; see also, e.g., *State* v. *Bruno*, supra, 236 Conn. 523–24, 526–27. The defendant fails to offer any evidence other than the statements themselves. See, e.g., *State* v. *Bruno*, supra, 527 ("the defendant did not offer any evidence as to whether depression could affect [the witness'] ability to perceive, recall and relate events").

Furthermore, defense counsel had the opportunity to cross-examine B concerning B's belief in repressed memories and paranoia to establish a connection. Therefore, upon reviewing the testimony and forensic interview of B, we conclude that B did not display a mental condition that would affect her testimonial capacity, and, thus, the trial court did not abuse its discretion in declining to conduct an in camera inspection of B's psychiatric records.

Finally, the defendant argues that, after the trial court had conducted an in camera review of D's psychiatric records, it improperly declined to disclose those records to the defendant. After conducting a thorough and independent review of D's sealed records, we conclude that the trial court did not abuse its discretion in denying the defendant access to D's psychiatric records because the records do not contain any information probative of D's "ability to comprehend, know or correctly relate the truth." (Internal quotation marks omitted.) *State* v. *McMurray*, supra, 217 Conn. 258–59. Our review of D's psychiatric records reveals that they are brief and do not contain any information that could have

served to challenge his credibility or that is inconsistent with his testimony. We thus conclude that D's psychiatric report would not have added weight to defense counsel's extensive cross-examination of D, and the trial court did not abuse its discretion in declining to disclose D's records to the defendant.

V

CONCLUSION

The defendant's convictions of sexual assault in the first degree and risk of injury to a child arising out of conduct with B and his conviction of sexual assault in the first degree arising out of conduct with J must be reversed. As a result, these cases must be remanded for resentencing. In addition, the trial court's vacating of the defendant's conviction of sexual assault in the fourth degree arising out of conduct with J must be upheld. We have previously adopted the "aggregate package" theory of sentencing. *State* v. *Miranda*, 260 Conn. 93, 128–30, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002). We therefore "must vacate a sentence in its entirety when we invalidate any part of the total sentence." *State* v. *Golodner*, supra, 305 Conn. 359. "On remand, the resentencing court may reconstruct the sentencing package or, alternatively, leave the sentence for the remaining valid conviction or convictions intact. . . . Thus, we must remand this case for resentencing on the [remaining counts] on which the defendant stands convicted." (Citation omitted.) *State* v. *Miranda*, 274 Conn. 727, 735 n.5, 878 A.2d 1118 (2005).

The judgments are reversed only as to the convictions relating to B and the conviction of sexual assault in the first degree for conduct relating to J, and the cases are remanded with direction to render judgments of

acquittal on those charges and for resentencing on the remaining convictions; the judgments are affirmed in all other respects.

In this opinion the other justices concurred.